977 So.2d 630 (2008)
Marilyn L. WOEBSE, as Personal Representative of the Estate of David Kramer, Appellant,
v.
HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, as licensee and owner of Heartland Health Care Center of Fort Myers; Manor Care of America, Inc.; Manorcare Health Services, Inc.; and Manor Care of Florida, Inc., Appellees.
No. 2D06-720.
District Court of Appeal of Florida, Second District.
February 6, 2008.
Darrin M. Phillips of Damn Phillips, P.A., Naples, and Bard D. Rockenbach and *632 Philip M. Burlington of Burlington & Rockenbach, P.A., West Palm Beach, for Appellant.
Sylvia H. Walbolt and Matthew J. Conigliaro of Carlton Fields, P.A., Tampa, for Appellees.
SALCINES, Judge.
Marilyn L. Woebse, as personal representative of the estate of Her father, David Kramer, appeals the nonfinal order granting a motion to compel arbitration. We reverse.
From February 5, 2003, until his death on August 4, 2004, Mr. Kramer was a resident of Heartland Health Care Center of Fort Myers, a nursing home, Ms. Woebse brought an action against Health Care and Retirement Corporation of America who owned and operated the nursing home. The complaint alleged there had been a deprivation of Mr. Kramer's nursing home resident's rights in violation of chapter 400, Florida Statutes, and stated a claim for wrongful death pursuant to chapter 768, Florida Statutes. Additional defendants included Manor Care of America, Inc.; Manorcare Health Services, Inc.; and Manor Care of Florida, Inc., all as employer of the employees and staff who worked at the nursing home (hereinafter the defendants shall be referred to collectively as "Heartland"). In response to the complaint, Heartland filed a motion to compel arbitration. Ms. Woebse opposed the motion to compel and claimed the arbitration agreement was unenforceable because it was unconscionable.
To succeed on an unconscionability claim, there must be a showing of both procedural and substantive unconscionability. Bland, ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So.2d 252, 256 (Fla. 2d DCA 2006). Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand disputed contract terms. Id.; Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 265 (Fla. 2d DCA 2004). Substantive unconscionability requires an assessment of whether the contract terms are "so `outrageously unfair' as to `shock the judicial conscience.'" Id. (quoting Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 285 (Fla. 1st DCA 2003)). A substantively unconscionable contract is one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Id. (quoting Hume v. United States, 132 U.S. 406, 411, 415, 10 S.Ct. 134, 33 L.Ed. 393 (1889)).
The trial court conducted a hearing on the motion to compel and considered the argument of counsel; the deposition of Mr. Kramer's other daughter, Arlene Wright; the affidavit of Heartland's admissions director, Nancy Tomei; and answers to interrogatories. In the written order granting the motion, the trial court found that the arbitration agreement was not unconscionable and was a valid contract.
A trial court's decision to grant a motion to compel arbitration is based in part on factual findings. Accordingly, the decision presents a mixed question of law and fact. The appellate review of the trial court's factual findings is limited to determining whether they are supported by competent, substantial evidence. However, the standard of review applicable to the trial court's construction of the arbitration provision and to its application of the law to the facts found is a de novo review. See Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1023 (Fla. 4th DCA 2005).

Procedural Unconscionability
Mr. Kramer had been living independently until he suffered a stroke. He was *633 admitted to the hospital and was so gravely ill that it was thought he would not survive for more than twenty-four hours. Fortunately, he did survive and eventually Mr. Kramer was to be discharged from the hospital. Ms. Wright was informed that rehabilitation would not be possible for her father and long-term care placement in a nursing home would be necessary. The social services department of the hospital found a placement for Mr. Kramer at Heartland, and he was admitted on Wednesday, February 5, 2003. Ms. Wright went to Heartland at the conclusion of her employment workday after 5 p.m. on Wednesday. She was not approached about signing paperwork for her father's admission[1] until the following evening. Ms. Wright finally met with the admissions director, Ms. Tomei, at approximately 1 p.m. on Friday afternoon, February 7, 2003.
Ms. Wright testified in her deposition that the entire meeting with Ms. Tomei lasted a total of approximately five minutes. Ms. Wright stated that she was presented with a consecutively numbered, thirty-seven page document entitled "Admission Agreement." She was told by Ms. Tomei that the document was "admission papers that were required to be signed for [her father's] continued stay." Ms. Wright testified that Ms. Tomei instructed her to sign the documents and "flipped through to the signature pages and [Ms. Wright] signed it." Ms. Tomei did not explain the documents to Ms. Wright other than to state that it was their policy to enforce a DNR (Do Not Resuscitate) order. Ms. Wright did not read the thirty-seven page document before she signed it, and the fact that an arbitration agreement was contained in the package was not pointed out or highlighted in any manner by Ms. Tomei. Immediately after Ms. Wright signed the document, Ms. Tomei left her office for another appointment. Ms. Wright never was supplied with a copy of the document she signed.
The record contains the affidavit of Ms. Tomei in which she stated that she remembered meeting with Ms. Wright, but she "[did] not specifically recall presenting the documents" to her. Her affidavit does not refute the recitation of facts contained in Ms. Wright's deposition but merely sets forth the manner in which she generally presents admissions paperwork to residents.
As had the plaintiff in Romano v. Manor Care, Inc., 861 So.2d 59 (Fla. 4th DCA 2003), Ms. Wright has demonstrated that there was procedural unconscionability in relation to the signing of the arbitration agreement. During the five-minute meeting which took place between Ms. Wright and Ms. Tomei, there was no attempt to inform Ms. Wright of the existence of the arbitration agreement, much less to explain the document to her and the rights she would be waiving on behalf of her father.
In Bland this court reviewed the identical arbitration agreement as is involved in the present case. However, in that case the arbitration agreement was "worded clearly, conspicuously and separate from other [admissions] documents." See Bland, 927 So.2d at 254. In the present case, the arbitration agreement was included as pages thirty-three through thirty-seven of the thirty-seven page sequentially numbered document. Ms. Wright was not given the opportunity to read the thirty-seven page document prior to signing *634 but was merely directed where to sign. Additionally, because Ms. Wright was never provided with a copy of the agreement, she did not have a chance to review the agreement at any time after this five-minute encounter.[2]
With regard to another determinative factor  equal bargaining power  it did not exist. Ms. Wright was never informed that she was not required to sign the arbitration agreement in order for her extremely ill, incapacitated father to be allowed to remain at the facility. In her deposition Ms. Wright testified that she was told by Ms. Tomei that "they were admission papers that were required to be signed for [her father's] continued stay."
The trial court's conclusion that there was no procedural unconscionability was not supported by competent, substantial evidence.

Substantive Unconscionability
At the hearing on the motion to compel, counsel for Ms. Woebse informed the court the arbitration agreement involved in the present case is the same as the agreement that was reviewed in Romano by the Fourth District.[3] In Romano the court issued a thoughtful opinion pointing out how chapter 400 was designed to protect the rights of nursing home residents and how the law provides an award of punitive damages for gross or flagrant conduct or conscious indifference to these rights.[4] We agree with and adopt the *635 Fourth District's analysis in Romano and hold that this arbitration agreement would not vindicate a nursing home resident's statutory rights in any manner because it specifically deprives the resident of those rights. In the present case, the trial court erred when it applied the law to the facts and determined that the arbitration agreement was not substantively unconscionable.[5]

Conclusion
Ms. Woebse demonstrated that the arbitration agreement in the present case is unconscionable as there was a showing of both procedural and substantive unconscionability. Accordingly, we reverse the order granting the motion to compel arbitration and remand for further proceedings.
Reversed and remanded.
ALTENBERND and SILBERMAN, JJ., Concur.
NOTES
[1] Mr. Kramer had executed a durable power of attorney appointing Ms. Wright his attorney-in-fact.
[2] In Bland, in which this court found no procedural unconscionability, we held there was no suggestion that the appellee, Healthcare and Retirement Corporation of America, had attempted to hide the terms of the arbitration agreement from Ms. Bland's daughter. Further, in contrast to the facts in the present case, the admissions director spent two hours with Ms. Bland's daughter on the day the arbitration agreement was signed. See Bland, 927 So.2d at 256.
[3] The Agreement provides, in pertinent part, as follows:

A. ARBITRATION PROVISIONS
1.1 Any and all claims or controversies between the Facility and the Resident arising out of or in any way relating to the Resident's stay at the Facility, including disputes regarding interpretation of this Agreement, whether arising out of State or Federal law, and whether based upon statutory duties, breach of contract, tort theories or other legal theories (including, without limitation, any claim based on Florida Statutes §§ 400.022, 400.023, 400.428, 400.429 . . .), shall be submitted to final and binding arbitration. Except as expressly set forth herein, the provisions of the Florida Arbitration Code, Florida Statu[t]es § 682.01, et. seq., shall govern the arbitration. Each party hereby waives its right to file a court action for any matter covered by this Agreement.
. . . .
B. LIMITATION OF LIABILITY PROVISION: Read Carefully Before Signing.
1.1 The parties to this Agreement understand that the purpose of this "Limitation of Liability Provision" is to limit, in advance, each party's liability in relation to this Agreement.
1.2 Liability for any claim brought by a party to this Agreement against the other party, . . . including, without limitation, claims for medical negligence or violation(s) of Florida Statutes § 400.022, et. seq., arising from simple or gross negligence, shall be limited as follows:
1. Net economic damages shall be awardable, including, but not limited to, past and future medical expenses, off-set by any collateral source payments; any outstanding liens shall be satisfied from the damages awarded.
2. Non-economic damages shall be limited to a maximum of $250,000.
3. Interest on unpaid nursing home charges shall not be awarded.
4. Punitive damages shall not be awarded.
[4] This same arbitration agreement also was the subject of litigation in Lacey v. Healthcare & Retirement Corp. of America, 918 So.2d 333 (Fla. 4th DCA 2005). The Fourth District found the arbitration agreement to be contrary to public policy and void.
[5] We note that our decision does not conflict with our opinion in Bland, 927 So.2d 252. In that case this court upheld the trial court's factual determination that there had been no showing of procedural unconscionability. Therefore, we declined to address the issue of substantive unconscionability because there must be a showing of both procedural and substantive unconscionability to succeed on such a claim. Id. at 256. This court noted that the issue of whether an agreement is void for violating public policy is a separate and distinct issue from whether an agreement is unconscionable. Id. at 257; see Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 299 (Fla. 4th DCA 2005) (en banc). In dicta, this court opined in Bland that even though not presented to the trial court for review, an arbitrator may exercise his or her authority to determine whether an arbitration agreement violates public policy and whether remedial limitations are enforceable. Bland, 927 So.2d at 258-59. In the present case Ms. Wright did not argue that the arbitration agreement violated public policy but only asserted that the agreement was unconscionable.