VILLANTI, Judge.
Tampa HCP, LLC; Emeritus Corporation; HCP, Inc.; and SOTAM, LLC, (collectively referred to as Emeritus) appeal the trial court’s order denying their motion to compel arbitration of the claims brought against them by Nancy Bachor, as personal representative of the Estate of Kathleen Truxell. The trial court concluded that Ms. Bachor had not knowingly and voluntarily waived the right to trial by jury. We reverse because the trial court’s factual findings are not supported by competent, substantial evidence and its construction of the arbitration agreement was erroneous as a matter of law.
As a result of Kathleen Truxell’s stay at an Emeritus facility, Ms. Bachor filed a lawsuit against Emeritus asserting negligence and violations of chapter 429, Florida Statutes. All of Ms. Truxell’s admissions documents related to her stay at *325 Emeritus were executed by Ms. Bachor,[1] pursuant to a durable power of attorney. Relevant to this case is the two-page arbitration agreement signed by Ms. Bachor. The agreement was clearly labeled “RESIDENT AND FACILITY BINDING ARBITRATION AGREEMENT (READ CAREFULLY).” It read, in relevant part:
[A]ny legal dispute, controversy, demand or claim ... that arises out of or relates to that certain Resident Admission Agreement ... executed by the Resident and the Facility, or any service or health care provided by the Facility to the Resident, shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the parties, or in the absence of such agreement, at the Facility, in accordance with the Florida Arbitration Code (which is incorporated into this Arbitration Agreement), and not by a lawsuit or resort to court process except to the extent that applicable state or federal law provides for judicial review of arbitration proceedings or the judicial enforcement of arbitration awards.
The agreement did not contain any limitations on damages, discovery, appellate rights, or any other limitations typically associated with nursing home or assisted living facility arbitration agreements. It provided that any damages awarded in arbitration would be “determined in accordance with the provisions of the state or federal law applicable to a comparable civil action.”
The agreement clearly stated that the person signing
understands that (1) he/she has the right to seek legal counsel concerning this Arbitration Agreement, (2) the execution of the Arbitration Agreement is not a precondition to the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written notice given to the Facility by the Resident within thirty (30) days of signature.
(Emphasis added.) Immediately before the signature line, it read:
THE PARTIES UNDERSTAND AND AGREE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY.
The evidence presented to the trial court also reflects that Ms. Bachor signed the arbitration agreement three days before her mother moved into the facility. The meeting in which the admissions documents were signed was ten to fifteen minutes long, partly because Ms. Bachor may have been returning to work after the meeting. No one affirmatively told Ms. Bachor that she was required to sign the arbitration agreement in order to have her mother admitted to the facility. There was no suggestion that anyone at the facility “tricked” or induced her to sign the agreement. However, Ms. Bachor subjectively believed that she needed to sign all the documents in the admissions packet given to her — including the arbitration agreement — in order to have her mother admitted to the facility. She testified that no one expressly told her that the arbitration agreement was optional and that she was afraid there would not be a room available for her mother if she did not immediately sign all the documents and pay a deposit. In Ms. Bachor’s words:
*326 Q. You mentioned that you wanted to get your mother admitted to this facility and you were handed a packet of documents to sign. Did you feel that you were in any way forced or coerced into signing these ... documents ... including the Arbitration Agreement?
[[Image here]]
A. I felt that we were — we were told that there was a room available that was becoming — or that was available for her. So I didn’t feel forced. I felt that I was on a short time line to get her admitted. And she was ready to be released, so we had a lot — my sister and I had a lot to prepare for once the paperwork was signed. We had to get movers and pack her belongings, and we were trying to get her settled into Southerland before — before her release. So we wanted to get all her furniture moved in and ready to go. And that was all within a few days time of this happening.
(Emphasis added.)
The arbitration agreement was presented to Ms. Bachor as part of an admissions “packet,” and no one affirmatively prevented her from reading any of the documentation. In fact, she asked questions during the meeting, but they were related to services to be provided to her mother. Several of the documents in the packet required Ms. Bachor to affirmatively select or decline specific services for her mother, and she made those choices. Although she received copies of the documents she had signed, she did not know if she reviewed them. And she did not exercise the right of rescission set forth in the arbitration agreement.
At the hearing on Emeritus’ motion to compel arbitration, Ms. Bachor argued that the arbitration agreement was both substantively and procedurally unconscionable. After considering the parties’ arguments, the trial court denied arbitration, concluding that Ms. Bachor “did not make a knowing and voluntary waiver.”[2] Under the circumstances of this case, the trial court’s ruling was error.
When a trial court’s ruling is based in part on factual findings, our review of its factual findings is limited to whether they are supported by competent, substantial evidence. Woebse v. Health Care & Ret. Corp. of Am., 977 So.2d 630, 632 (Fla. 2d DCA 2008). But we review de novo the court’s construction of the arbitration provision and its application of the law to the facts. Id.
Courts generally favor arbitration agreements, Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005), but such agreements are subject to state law contract defenses such as unconscionability, Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 264 (Fla. 2d DCA 2004). To succeed in an unconscion-ability argument, both procedural and substantive unconscionability must be shown. Bland, ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So.2d 252, 256 (Fla. 2d DCA 2006). If the arbitration agreement is not procedurally unconscionable, the court does not reach substantive uncon-scionability. Id. at 257; Eldridge v. Integrated Health Servs., Inc., 805 So.2d 982, 982 (Fla. 2d DCA 2001).
Procedural unconscionability relates to the manner in which the contract was made. Bland, 927 So.2d at 256. It *327 involves issues such as the parties’ relative bargaining power and their ability to know and understand disputed contract terms. Id. A court can find a contract unconscionable if important terms are “hidden in a maze of fíne print,” minimized by deceptive sales practices, or if the contract has a “take it or leave it” approach with an absence of meaningful choice on the part of the consumer. See Orkin Exterminating Co., 872 So.2d at 265; Powertel, Inc. v. Bexley, 748 So.2d 570, 574 (Fla. 1st DCA 1999).
To determine if an arbitration agreement is procedurally unconscionable, “a court must look to the ‘circumstances surrounding the transaction’ to determine whether the complaining party had a ‘meaningful choice’ at the time the contract was entered.” Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 284 (Fla. 1st DCA 2003) (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965)). On facts very similar to the facts of this case, the First District in Weston rejected the trial court’s finding that an arbitration agreement was procedurally unconscionable.
In Weston the nursing home resident’s daughter met with the nursing home admissions personnel during her lunch break, in a meeting that lasted fifteen to twenty minutes. Id. at 281. She did not ask questions about the admissions contract, had no substantive discussions about the document with the facility’s personnel, and claimed that she did not read it before signing. Id. at 281. The daughter did not ask to take the document home to review it or to seek a lawyer’s advice before signing. Id. There was no evidence that the mother would have been denied admission to the facility if the daughter had declined the arbitration agreement. Id. The trial court found the arbitration agreement unconscionable, but the First District reversed, finding that the agreement was not procedurally unconscionable. Id. at 280.
The First District focused on whether the evidence presented to the trial court reflected an absence of meaningful choice at the time the contract was signed— whether the contract was presented as a “take-it-or-leave-it” deal. Id. at 281. Among the factors influencing the district court’s decision in Weston were the following: (1) any haste associated with reviewing and signing the admissions document was self-imposed by the resident’s daughter, (2) there was no suggestion the admissions document had been presented to the daughter on a “take-it-or-leave-it” basis, (3) there was no evidence that the arbitration provision would not have been deleted if the daughter had so requested, and (4) there was no evidence that the resident would have been rejected had the daughter declined to sign the agreement. Id. at 285. To the extent the daughter failed to read the agreement, nothing the nursing home did or said caused her failure read it. Id. at 287-88. After looking at all the circumstances surrounding the transaction, it was “simply not reasonably possible to reach the conclusion that [the daughter] had no ‘meaningful choice’ at the time she executed the Admission Contract.” Id. at 288. The court concluded: “To permit one to avoid the requirements of the arbitration provision on the basis of the evidence presented to the trial court would stand contract law on its head.” Id. The same can be said in this case.
The evidence here did not show procedural unconscionability. No one at the facility told Ms. Bachor that she was required to sign the arbitration agreement in order to have her mother admitted to the facility. Ms. Bachor was not rushed by anyone to sign the agreement, and any haste in signing the agreement was self-imposed. The arbitration agreement *328 clearly stated that she had the right to review the agreement with a lawyer, that signing the agreement was not a precondition to admission to the facility, and that she could rescind the agreement within thirty days of signing it. See Bland, 927 So.2d at 256 (noting that resident’s daughter did not exercise right to rescind the arbitration agreement within three days, as provided in the contract). The fact that Ms. Bachor chose not to read the arbitration agreement before signing it does not relieve her of the bargained-for deal. See Estate of Etting ex rel. Etting v. Regents Park at Aventura, Inc., 891 So.2d 558, 558 (Fla. 3d DCA 2004). The fact that the facility representative did not voluntarily explain the arbitration agreement to the literate daughter or expressly tell her that she did not have to sign it is not enough to support a conclusion that the agreement was procedurally unconscionable. See Bland, 927 So.2d at 256. The totality of the circumstances reflects that Ms. Bachor had a meaningful opportunity to review the arbitration agreement, to obtain guidance, and to accept or reject the terms of the arbitration agreement. She also had an opportunity to reconsider her decision during the revocation period. Consequently, on these facts, the agreement was not procedurally unconscionable. Because of our ruling, it is not necessary to address substantive unconscionability. See Bland, 927 So.2d at 257.
Reversed and remanded.
LaROSE and MORRIS, JJ., Concur.

. Ms. Bachor is Ms. Truxell’s daughter.

. In its ruling, the trial court used language reminiscent of the analysis applicable to a waiver of jury trial in a criminal case. As explained in this opinion, in the context of a motion to compel arbitration, the question is whether the nursing home or assisted living facility resident knowingly and voluntarily assented to the terms of the parties' contract.