CRENSHAW, Judge.
 

 Sandra Kennedy, as personal representative of the Estate of Joseph G. Bush (the Estate), brought an action for negligence and wrongful death against several defendants including SA-PG Sun City Center, LLC, d/b/a Palm Garden of Sun City Center (defendants collectively referred to as Palm Garden).
 
 [1]
 
 Palm Garden appeals the trial court’s nonfinal order denying their motion to compel arbitration and finding the arbitration agreement procedurally and substantively unconscionable. Because the trial court’s factual findings are not supported by competent, substantial evidence and because it erred as a matter
 
 *918
 
 of law in concluding that the arbitration agreement was procedurally unconscionable, we reverse and remand for further proceedings.
 

 Background
 

 Ms. Kennedy, daughter of Mr. Bush and personal representative of the Estate, brought several claims against Palm Garden, the nursing home in which Mr. Bush resided for approximately six months from 2007 to 2008. The complaint included claims for negligence and wrongful death in violation of Mr. Bush’s rights under chapter 400, Florida Statutes. In response to the complaint, Palm Garden filed a motion to abate and compel arbitration. At the hearing on the motion to compel arbitration, the trial court considered the depositions of Ms. Kennedy and of Cheryl Moore, the nursing home director of admissions. The trial court also had a copy of the signed admissions papers.
 

 In her deposition, Ms. Kennedy stated that Mr. Bush was taken to Palm Garden by ambulance. Ms. Kennedy drove her mother, Fern Bush, separately to meet with Ms. Moore, the admissions director. The admissions papers indicate that the father arrived at Palm Garden on November 19, 2007, and that the admissions papers were signed the next day. The admissions papers consisted of a thirty-five-page packet, which contained a one-page arbitration agreement on page sixteen.
 

 Ms. Kennedy was present at the time Ms. Bush signed the admissions papers on behalf of Mr. Bush.
 
 [2]
 
 Ms. Kennedy stated that she and Ms. Bush met with Ms. Moore for what “seemed like a long time,” but she was unable to recall several details. Ms. Kennedy did not read the documents as Ms. Moore went through them with Ms. Bush. She did not recall seeing the arbitration agreement in the admissions packet, nor did she recall Ms. Moore offering an explanation of arbitration. She stated that at the time of signing, Ms. Bush suffered from macular degeneration and a cataract which impeded her ability to read regular and small print; therefore, Ms. Bush could not have been able to read the arbitration agreement. Ms. Bush was given an opportunity to ask questions, but she did not indicate that she was unable to read the documents, and Ms. Kennedy recalled Ms. Bush asking questions related only to costs. Although Ms. Moore never stated so, Ms. Kennedy opined that Ms. Bush thought signing the documents was necessary for Mr. Bush’s admission into the nursing home.
 

 Ms. Moore stated in her deposition that she did not specifically recall Mr. Bush or his family. However, she explained her routine practice of reviewing the admissions packets and obtaining signatures. She stated that it takes an average of twenty to thirty minutes to go through the thirty-five-page admissions packet. Her customary practice is to highlight specific areas on each page and to give a basic explanation of arbitration. If she believes that the person signing the admissions papers is confused, then she will not allow that person to sign.
 

 Following the hearing, the trial court entered its written order denying Palm Garden’s motion to compel arbitration and concluding that the arbitration agreement signed by Ms. Bush was procedurally and substantively unconscionable.
 

 Discussion
 

 “ ‘In determining whether a dispute is subject to arbitration, courts consider at least three issues: (1) whether a valid written agreement to arbitrate exists;
 
 *919
 
 (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.’ ”
 
 Hillier Grp., Inc. v. Torcon, Inc.,
 
 932 So.2d 449, 452 (Fla. 2d DCA 2006) (quoting
 
 Stacy David, Inc. v. Consuegra,
 
 845 So.2d 303, 306 (Fla. 2d DCA 2003)).
 

 A trial court’s decision to grant a motion to compel arbitration is based in part on factual findings. Accordingly, the decision presents a mixed question of law and fact. The appellate review of the trial court’s factual findings is limited to determining whether they are supported by competent, substantial evidence. However, the standard of review applicable to the trial court’s construction of the arbitration provision and to its application of the law to the facts found is a de novo review.
 
 See Fonte v. AT & T Wireless Servs., Inc.,
 
 903 So.2d 1019, 1023 (Fla. 4th DCA 2005).
 

 Woebse v. Health Care & Ret. Corp. of Am.,
 
 977 So.2d 630, 632 (Fla. 2d DCA 2008).
 

 “In challenging the validity of an arbitration agreement, a party must assert defenses applicable to all contracts — defenses such as fraud, duress, or uncon-scionability.”
 
 ManorCare Health Servs., Inc. v. Stiehl,
 
 22 So.3d 96, 99 (Fla. 2d DCA 2009). This court requires a party asserting the defense of unconscionability to demonstrate both procedural and substantive unconscionability.
 
 Bland, ex. rel. Coker v. Health Care & Ret. Corp. of Am.,
 
 927 So.2d 252, 256 (Fla. 2d DCA 2006),
 
 abrogated on other grounds by Shotts v. OP Winter Haven, Inc.,
 
 — So.3d -, 2011 WL 5864830 (Fla.2011). If this court determines that the arbitration agreement is not procedurally unconscionable, then it does not need to reach the issue of substantive unconscionability.
 
 Id.
 
 at 257.
 

 Procedural unconscionability relates to the manner in which the contract was made and involves issues such as the parties’ relative bargaining power and their ability to know and understand disputed contract terms.
 
 [Bland,
 
 927 So.2d at 256.] A court can also find a contract unconscionable if important terms are hidden in fine print or if the contract reflects an absence of meaningful choice on the part of the consumer.
 
 See Orkin Exterminating Co. v. Petsch,
 
 872 So.2d 259, 265 (Fla. 2d DCA 2004).
 

 FL-Carrollwood Care, LLC v. Gordon,
 
 72 So.3d 162, 165 (Fla. 2d DCA 2011). In determining whether there was an absence of meaningful choice on the part of the complaining party, courts may consider “whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract, or whether the terms were merely presented on a ‘take-it- or-leave-it’ basis; and whether he or she had a reasonable opportunity to understand the terms of the contract.”
 
 Gainesville Health Care Ctr., Inc. v. Weston,
 
 857 So.2d 278, 284 (Fla. 1st DCA 2003).
 

 Here, the trial court’s conclusion that the arbitration agreement was procedurally unconscionable was based upon the following findings in the written order:
 

 Ms. Bush did not have the ability to know and understand the terms of the arbitration agreement; she was physically unable to read the document, the agreement was not explained to her, she had no meaningful opportunity to have the agreement reviewed by anyone who could explain it to her, and the director, who might have addressed any questions which Ms. Bush had, had an inadequate understanding of the arbitration agreement to be of much use explaining it.
 

 We conclude that the record does not support the trial court’s factual findings or its conclusion that the arbitration agreement was procedurally unconscionable. Ms. Bush failed to indicate that she had any difficulty in reading the arbitration agree
 
 *920
 
 ment. And despite an opportunity to ask questions, Ms. Bush failed to ask any questions about the arbitration agreement. Ms. Kennedy could not recall whether Ms. Moore reviewed the arbitration agreement with Ms. Bush, but Ms. Moore stated that it was her common practice to highlight each portion of the admissions packet which included the arbitration agreement. We find the circumstances here similar to those in
 
 Weston,
 
 where the First District noted:
 

 [The signing party] asked no questions about the arbitration provision and said or did nothing to indicate she had not read and understood that provision before she executed the contract ... there is nothing to suggest that the contract was presented on a “take-it-or-leave-it” basis, or that, had [the signing party] requested that the arbitration provision be deleted, it would not have been; there is no evidence that [the signing party] could not have obtained a satisfactory placement for [the individual seeking admission] except by acquiescing to the terms of the contract; and that, to the extent [the signing party] did not, in fact, read the arbitration provision, nothing [the admissions director] did or said had any impact on her failure to do so.
 

 857 So.2d at 287-88. Here the trial court noted that “there is nothing in the language of the agreement to indicate that a person may be admitted to the facility without first agreeing to arbitration,” and that “[t]here is nothing in the record to suggest that the director of admissions volunteered that agreeing to arbitration was not a mandatory part of admission.”
 
 [3]
 
 However, we note that “[a]s the party seeking to avoid the arbitration provision on the ground of unconscionability,
 
 the burden [is] on [the party claiming uncon-scionability] to present evidence sufficient to support that claim.” Id.
 
 at 288 (emphasis added). And here there is no evidence that the admissions director affirmatively indicated that admission was contingent upon signing the arbitration agreement.
 
 See, e.g., Woebse,
 
 977 So.2d at 633-34 (finding procedural unconscionability where the signing party was told signing the arbitration agreement was
 
 required
 
 for her father’s continued stay).
 

 There is also no evidence demonstrating that Ms. Bush was coerced into signing or prevented from understanding the contents of the arbitration agreement.
 

 [A party’s] alleged inability to understand the Agreement does not vitiate her assent to that Agreement in the absence of some evidence that she was prevented from knowing its contents. Florida law has long held that a party to a contract is “conclusively presumed to know and understand the contents, terms, and conditions of the contract.”
 

 Rocky Creek Ret. Prop., Inc. v. Estate of Fox ex rel. Bank of Am.,
 
 19 So.3d 1105, 1108-09 (Fla. 2d DCA 2009) (quoting
 
 Stonebraker v. Reliance Life Ins. Co. of Pittsburgh,
 
 123 Fla. 244, 166 So. 583, 584 (1936)). And “[t]his is true
 
 whether a party is physically unable to read
 
 the agreement or simply chooses not to read the agreement.”
 
 Id.
 
 at 1108 (emphasis added) (citation omitted).
 

 The Estate relies upon
 
 Woebse
 
 in arguing that the arbitration agreement was procedurally unconscionable, but we find that the facts here are distinguishable. In
 
 Woebse,
 
 the plaintiff signed the admissions papers on her father’s behalf. 977 So.2d
 
 *921
 
 at 633. She met with the admissions director for approximately five minutes, was presented with a thirty-seven-page admissions document containing a five-page arbitration agreement, and was told where to sign.
 
 Id.
 
 Here, the arbitration agreement was limited to one page, and unlike the plaintiff in
 
 Woebse,
 
 Ms. Bush met with the admissions director to go over the documents for approximately twenty to thirty minutes, or what Ms. Kennedy described as what “seemed like a long time.” And in
 
 Woebse,
 
 the trial court considered other facts in finding procedural unconseionability, such as the admissions director advising the plaintiff that a signature was “required” for her father’s continued stay.
 
 Id.
 
 at 634.
 

 We conclude based on the totality of the circumstances surrounding the formation of the arbitration agreement that any finding that Ms. Bush was not afforded a meaningful choice or reasonable opportunity to understand the contents of the agreement is not supported by competent, substantial evidence. Accordingly, we conclude that the arbitration agreement was not procedurally unconscionable. And because we find no procedural unconscion-ability, we do not need to reach the issue of substantive unconscionability.
 
 See Tampa HCP, LLC v. Bachor,
 
 72 So.3d 323, 328 (Fla. 2d DCA 2011).
 

 Reversed and remanded.
 

 WALLACE and KHOUZAM, JJ., Concur.
 

 [1]
 

 . Defendant Andrea Cornwell has filed a separate appeal raising the same issues as the appellants in this case.
 
 See Cornwell v. Kennedy,
 
 79 So.3d 935 (Fla. 2d DCA 2012).
 

 [2]
 

 . The trial court noted in its written order that Ms. Bush was unable to give her account of the admissions process because of her current medical condition.
 

 [3]
 

 . We note that the trial court seems to have blurred the distinction between substantive and procedural unconscionability. However, we consider this factor in our analysis of procedural unconscionability.