NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


FLORIDA HOLDINGS III, LLC;　　　　　)
2600 HIGHLANDS BOULEVARD,　　　　)
NORTH, LLC; and MICHAEL T. ROSS　)
(as to BAY TREE CARE &　　　　　　　)
REHABILITATION CENTER),　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　Appellants,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　)　　Case No. 2D15-1486
　　　　　　　　　　　　　　　　　　　　　)
SHEILA M. DUERST, by and through　)
DEBRA L. DUERST, Attorney-In-Fact,　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　Appellee.　　　　　　　　　　　)
_____)

Opinion filed March 11, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pinellas County;
Anthony Rondolino, Judge.

Ronald E. Bush and Karen M. Shimonsky of
Bush Graziano Rice & Platter, P.A., Tampa,
for Appellants.

Isaac R. Ruiz-Carus, Megan L. Gisclar and
Jason R. Delgado of Wilkes & McHugh, P.A.,
Tampa, for Appellee.


SALARIO, Judge.

Appellee Debra M. Duerst, as attorney-in-fact for her mother, filed a complaint in the trial court alleging violations of her mother's nursing home resident's rights under sections 400.022 and 400.023, Florida Statutes (2012), and other related claims against appellants Florida Holdings III, LLC, 2600 Highlands Boulevard North, LLC, and Michael T. Ross (the Bay Tree parties). The Bay Tree parties, all connected to the nursing facility and events at issue in the case, filed a motion to stay the litigation and compel arbitration pursuant to an arbitration agreement signed by Ms. Duerst at the time of her mother's admission to the facility. After an evidentiary hearing at which the only disputed issue was whether the arbitration agreement was unconscionable, the trial court denied the motion in an unelaborated order. Because the trial court erred in its application of the law to the facts, we reverse and remand with instructions to grant the motion.

I.

In April 2012, Ms. Duerst's mother, Sheila, was admitted to Bay Tree Care and Rehabilitation Center in Pinellas County after being treated at a hospital for a leg infection. Having been appointed attorney-in-fact for her mother pursuant to a durable power of attorney, Ms. Duerst handled the admissions process for her mother. Ms. Duerst was approximately fifty-seven years old, was employed as an international operator for conference calls, had no legal training, and did not know what arbitration was.

As part of the admissions process, Ms. Duerst was seated in a room and provided with a series of forms and papers to sign. Among those papers was a six-page document titled "Long Term Care Arbitration Agreement." The agreement was printed in

legible type.  In substance, it provided that all disputes arising out of the resident's care at Bay Tree would be submitted to binding arbitration pursuant to the procedural rules of the National Arbitration Forum (NAF) and the substantive laws of Florida.[1]  It provided no substantive limitations on the type of claims that could be asserted or the type or amount of damages that could be awarded in the arbitration proceedings.

The first page of the agreement states that "**THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS.  PLEASE READ IT CAREFULLY AND IN ITS ENTIRETY BEFORE SIGNING IT.**"  The first substantive paragraph of the agreement is titled "**WHAT IS ARBITRATION?**" and states that arbitration is "a cost effective and time saving method of resolving disputes without involving the courts" in which "disputes are heard and decided by a private individual called an arbitrator" and "will not be heard or decided by a judge or jury."  Later, the agreement explains that "[b]y signing this agreement, the Parties are giving up and waiving their rights to have any dispute decided in a court of law before a judge and/or jury."  Immediately before the signature line, and again in bold type, the agreement repeats that its effect is to waive the parties' rights to have any dispute decided in court before a judge or jury.

In a section titled "**RIGHT TO CHANGE YOUR MIND**," the agreement provides that it "may be cancelled by written notice sent by certified mail . . . within thirty

---

[1]After being sued by the Minnesota Attorney General, NAF ceased serving as an arbitration forum for consumer claims, including nursing home claims, in 2009. See Sheptak v. Transitional Hosps. Corp. of Tampa, Inc., 40 Fla. L. Weekly D1420 (Fla. 2d DCA June 17, 2015) (Altenbernd, J., concurring).  The agreement here did not select NAF as the arbitration forum; it provided its own mechanisms for selecting an arbitrator and arbitration administrator and stated only that the NAF rules would govern procedure. Ms. Duerst has not raised any issue with the agreement's selection of the NAF rules for this purpose.

(30) calendar days of the Resident's date of admission." The last operative paragraph of the agreement is titled "**VOLUNTARY AGREEMENT**" and states that "[i]f you do not accept this Agreement, you will still be allowed to live in, and receive services in, this Facility."

Although the evidence before us does not disclose the reasons, Sheila Duerst's condition deteriorated while a resident at Bay Tree. On May 30, 2014, Ms. Duerst filed a complaint in the circuit court alleging that the Bay Tree parties violated Sheila Duerst's statutory resident's rights and asserting other claims. The Bay Tree parties responded with a motion to stay proceedings and compel arbitration under the agreement signed by Ms. Duerst at the time of admission. Following limited discovery related to whether the claim was required to be arbitrated, the circuit court conducted an evidentiary hearing on the motion.

At the hearing, the parties stipulated that the only disputed issue with respect to the motion was whether the arbitration agreement was unenforceable due to unconscionability. The parties submitted the depositions of Ms. Duerst and a representative of Bay Tree, together with the arbitration agreement and other relevant documents, and the court heard live testimony from Ms. Duerst.

Ms. Duerst's testimony focused principally on the Bay Tree admissions process and the circumstances surrounding her execution of the arbitration agreement. She recalled the admissions process as having been "real quick"—approximately ten minutes—and could remember only being told to sign the documents presented to her and "flipping through and signing" them where the need for a signature was indicated. She did not read the arbitration agreement and does not believe that she was given an

opportunity to decline to sign the document.  Ms. Duerst believed that she was required to sign all of the admission documents in order for her mother to receive care at the facility and could not recall anyone explaining the arbitration agreement to her.

After Ms. Duerst testified, her counsel argued that the circumstances surrounding the admissions process rendered the arbitration agreement procedurally unconscionable.  Counsel further argued that certain provisions of the arbitration agreement—limiting discovery and opting out of the NAF rules governing appeals— rendered the agreement substantively unconscionable.[2]  The trial court took the motion under advisement, and the parties each submitted a proposed order reaching the result they requested.

The trial court entered both of those orders—one granting the motion to stay and compel arbitration and the other denying it—which prompted appellants to move for clarification.  The trial court thereafter entered an unelaborated order denying the motion to compel arbitration and a separate order vacating the earlier order granting that motion.  This appeal timely followed.

II.

A trial court's order on a motion to compel arbitration is reviewed for competent, substantial evidence with respect to factual findings and de novo with respect to the application of the law to the facts.  Woebse v. Health Care & Ret. Corp. of Am., 977 So. 2d 630, 632 (Fla. 2d DCA 2008).  Arbitration is a matter of contract, and

---

[2]Ms. Duerst also argued that a provision of the agreement that opts out of the NAF rule permitting arbitration fee waivers for indigents was unconscionable. However, she presented no evidence that she was indigent and effectively conceded that she was not affected by this provision of the agreement.  Ms. Duerst has not pursued this argument on appeal.

- 5 -

agreements to arbitrate are thus subject to state law defenses to the enforcement of contracts. Basulto v. Hialeah Auto., 141 So. 3d 1145, 1156 (Fla. 2014). One such defense is the doctrine of unconscionability, which "has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Id. at 1157 (emphasis omitted) (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)).

An agreement to arbitrate will be deemed unenforceable on grounds of unconscionability when it is both procedurally and substantively unconscionable. Tampa HCP, LLC v. Bachor, 72 So. 3d 323, 326 (Fla. 2d DCA 2011) (citing Bland ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So. 2d 252, 256 (Fla. 2d DCA 2006), abrogated in part by Basulto, 141 So. 3d at 1160-61). Procedural unconscionability focuses on the manner in which the contract containing an arbitration agreement was made and asks "whether the complaining party had a meaningful choice at the time the contract was signed." Brea Sarasota, LLC v. Bickel, 95 So. 3d 1015, 1017 (Fla. 2d DCA 2012) (citing Tampa HCP, 72 So. 3d at 327). Substantive unconscionability focuses on the terms of the contract and requires a court to determine "whether the contract terms are 'so "outrageously unfair" as to "shock the judicial conscience." ' " Woebse, 977 So. 2d at 632 (quoting Bland, 927 So. 2d at 256).

The burden of proving unconscionability lies with the party seeking to avoid arbitration. Spring Lake NC, LLC v. Beloff, 110 So. 3d 52, 54 (Fla. 2d DCA 2013). In determining whether a party has met this burden, our court has traditionally assessed procedural and substantive unconscionability independently, ending the analysis if one

was lacking.  See Bland, 927 So. 2d at 257.  In Basulto, however, our supreme court rejected that analysis in favor of a balancing approach under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa."  Basulto, 141 So. 3d at 1159 (quoting Romano ex rel. Romano v. Manor Care, Inc., 861 So. 2d 59, 62 (Fla. 4th DCA 2003)).  This method "recognizes that although the concept of unconscionability is made up of both a procedural component and a substantive component, it often involves an evaluation in which the two principles are intertwined."  Id. at 1160.  Although this approach contemplates that procedural and substantive unconscionability do not need to exist to the same degree, both elements must exist to render an arbitration provision unenforceable.  Id. at 1159.  Neither is sufficiently present in this case.

A.

We turn first to procedural unconscionability.  Whether a party was afforded a meaningful choice with regard to arbitration—the touchstone of the inquiry—is determined from the totality of the circumstances.  See SA-PG Sun City Ctr., LLC. v. Kennedy, 79 So. 3d 916, 921 (Fla. 2d DCA 2012).  Relevant factors include (1) whether the party resisting arbitration had a realistic opportunity to bargain over the provision (or conversely, whether the terms were presented on a take-it-or-leave-it basis) and (2) whether the party resisting arbitration had a reasonable opportunity to understand the terms of the contact (or conversely, whether the terms were concealed, minimized, or buried in fine print).  See Basulto, 141 So. 3d at 1160 (quoting Walker-Thomas Furniture, 350 F.2d at 449); Spring Lake, 110 So. 3d at 54 (citing Brea Sarasota, 95 So. 3d at

1017).  The evidence does not support a conclusion that the arbitration agreement here was procedurally unconscionable.

The express terms of the arbitration agreement establish that Ms. Duerst had a reasonable opportunity to understand the terms of the agreement and a reasonable opportunity to bargain over them.  In plain English, the agreement explains what arbitration is and what rights a party loses by agreeing to it.  It states that the party should read the document carefully, ask any questions he or she may have, and, if desired, consult with an attorney.  It provides that acceptance of arbitration is not a prerequisite to admission to the facility and, even if arbitration is agreed to, that the agreement may be cancelled within thirty days.  Insofar as its terms are concerned, such an agreement cannot be described as procedurally unconscionable.  See Brea Sarasota, 95 So. 3d at 1017 (emphasizing provisions showing that agreement to arbitration was not a prerequisite to treatment and could be cancelled within fifteen days in holding that agreement was not procedurally unconscionable); Tampa HCP, 72 So. 3d at 327-28 ("The arbitration agreement clearly stated that she had the right to review the agreement with a lawyer, that signing the agreement was not a precondition to admission to the facility, and that she could rescind the agreement within thirty days of signing it.").

Ms. Duerst contends that a hurried Bay Tree admissions process rendered this procedurally fair agreement procedurally unconscionable.  She emphasizes (1) that she had no legal training or experience, (2) that the documents were not explained to her orally, (3) that she was given the documents and told to sign them in a process that lasted about ten minutes, and (4) that she was under the impression that she had to sign the documents in order for her mother to receive treatment and did not think she was

- 8 -

allowed to decline signing it. As a result, Ms. Duerst did not read the agreement and was unaware of its procedural protections.

There is no evidence, however, that anyone at Bay Tree did anything to prevent Ms. Duerst from reading the agreement or to lead her to believe that, contrary to its terms, she could not decline to agree to arbitration and still have her mother admitted to the facility. It is settled that "a party 'should not be permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it . . . .' " Spring Lake, 110 So. 3d at 55 (quoting Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 288 (Fla. 1st DCA 2003)). In light of that principle, our court has declined to find procedural unconscionability in circumstances like those present in this case.

In Tampa HCP, for example, a daughter acting as attorney-in-fact for her mother sought to avoid an arbitration agreement she signed when her mother was admitted to a facility by asserting that the agreement was unconscionable. 72 So. 3d at 326. The agreement explained that arbitration involved giving up the right to have a dispute heard in court, provided for an opportunity to consult with a lawyer, provided that it could be rescinded on thirty-days' notice, and provided that acceptance was not a precondition to admission. Id. at 325. The resident's daughter did not read the agreement. Id. at 328. She testified that the meeting at which she signed the agreement and other paperwork was ten to fifteen minutes long, that she believed she needed to sign all of the documents in order to have her mother admitted, that she was afraid there would not be a room available to her mother if she did not sign all of the documents, and that no one told her the arbitration agreement was optional. Id. at 325-26. There was no

evidence that she was prevented from reading the arbitration agreement or that anyone tricked or induced her into signing it. Id.

We reversed the trial court's order denying the facility's motion to compel arbitration. Id. at 328. In determining that the circumstances surrounding the execution of the agreement did not render it procedurally unconscionable, we explained that no one at the facility told the resident's daughter that she was required to sign the agreement; nor was she rushed by anyone at the facility to sign it. Id. at 327. Although the agreement granted her the right to reconsider her decision, there was no evidence that she attempted to exercise it. Id. at 328. The fact that a facility representative did not voluntarily explain the agreement to her or advise her that she did not have to sign it was "not enough to support a conclusion that the agreement was procedurally unconscionable." Id. We held that under the totality of the circumstances, there was no evidence that the facility did anything to deny the resident's daughter "a meaningful opportunity to review the arbitration agreement, to obtain guidance, and to accept or reject the terms of the arbitration agreement." Id.

The facts of this case are not distinguishable in any material respect from those of Tampa HCP. The arbitration agreement here contains procedural protections that are at least as robust as those in Tampa HCP. Ms. Duerst has presented no evidence that Bay Tree told her that she was required to sign the arbitration agreement as a condition of her mother's admission or that she was rushed to sign the documents without reading them. Ms. Duerst signed the arbitration agreement under the subjective belief that it was a condition of her mother's admission, but there is no evidence that Bay Tree induced her to have that belief. As in Tampa HCP, we are presented with an

- 10 -

attorney-in-fact who voluntarily signed a procedurally fair agreement that she had not read.  As we held in Tampa HCP and have held again since, that does not render the agreement procedurally unconscionable.  See Spring Lake, 110 So. 3d at 55 (reversing order denying motion to compel arbitration where agreement contained similar procedural provisions and party signed agreement during a fifteen-minute meeting in which she was not pressured to sign documents); Brea Sarasota, 95 So. 3d at 1016-17 (reversing order denying motion to compel arbitration where arbitration agreement contained similar provisions and was executed under circumstances where the party felt "rushed" to get her father into the sole Medicaid-eligible room remaining at the facility and where the party was under a subjective belief that she was required to sign because she had not been "prevented from knowing its contents"); SA-PG, 79 So. 3d at 919-20 (reversing order denying motion to compel arbitration agreement where, even though party had a diminished ability to read regular and small print due to vision loss, there was no evidence that admissions director "affirmatively indicated" that signing the agreement was required for admission and no evidence that the party was "coerced into signing or prevented from understanding . . . the arbitration agreement").

Ms. Duerst argues that our decision in Woebse, which also involved a daughter signing admissions paperwork including an arbitration provision on behalf of a parent, compels affirmance of the trial court's order.  That case is inapposite.  In Woebse, the daughter was presented with a consecutively-numbered, thirty-seven-page admission agreement that contained an arbitration agreement that she signed without reading during a five-minute admissions session.  977 So. 2d at 633.  There is no indication that the arbitration agreement was conspicuous or contained the procedural

- 11 -

protections—including the cancellation right—present in Tampa HCP and other cases. Most significantly, the admissions director in Woebse told the daughter that execution of the admissions agreement was required for her father's continued stay in the facility.  Id.

There is no evidence of these facts here.  Unlike the facts in Woebse, the totality of the circumstances in this case does not support a conclusion of procedural unconscionability.[3]  See SA-PG, 79 So. 3d at 920-21 (distinguishing Woebse on grounds, among others, that arbitration agreement was contained in a thirty-seven-page admissions agreement and that daughter was told that signing was required for her father's continued stay).  As far as this case is concerned, we have a conspicuous and fairly-written arbitration agreement unaccompanied by evidence of coercion.

B.

Even if the facts here demonstrated some slight degree of procedural unconscionability, however, there is no evidence of substantive unconscionability to add to the balance as required by Basulto.  Substantive unconscionability exists where "the contract terms . . . are so outrageously unfair as to shock the judicial conscience." FL-Carrollwood Care, LLC v. Gordon, 72 So. 3d 162, 165 (Fla. 2d DCA 2011).  We view a substantively unconscionable contract term as "one that 'no man in his senses and not

---

[3]Ms. Duerst also relies on the Fourth District's decision in Romano, 861 So. 2d 59.  Although there are some similarities between the facts of Romano and this case, Tampa HCP and our subsequent cases are both binding and more analogous.  The focus of Romano was not procedural unconscionability, but rather "egregious substantive unconscionability" in the form of a ban on punitive damages. Id. at 64.  That serious substantive transgression, combined with what the Romano court described as some slight "irregularity in the contract formation," drove its analysis of unconscionability. Id. at 62.  Here, we see no irregularity in the contract formation under our precedents, and as described later in this opinion, we see no substantive unconscionability either.

under delusion would make . . . and as no honest and fair man would accept . . . .' " Woebse, 977 So. 2d at 632 (quoting Bland, 927 So. 2d at 256).

To establish substantive unconscionability, Ms. Duerst first asserts that the arbitration agreement's adoption of NAF rule 29 restricts her ability to obtain discovery. She argues that under rule 29, discovery must be "relevant to a Claim or Response, reliable, and informative to the Arbitrator," while under rule 1.280(b)(1) of the Florida Rules of Civil Procedure discovery need only be "relevant to the subject matter of the pending action."  She also asserts that the additional requirement that discovery be "reliable and informative" is "not reasonable and significantly reduces" a claimant's ability to prove his or her claims.

This argument is unavailing because Ms. Duerst has not carried her burden to prove that the requirements that discovery be reliable and informative will significantly and negatively affect her ability to prove her claims.  It is not self-evidently true that the requirements that discovery be reliable (i.e., credible) and informative (i.e., useful) impose unfairly formidable burdens upon claimants seeking to develop evidence to prove their cases at a final arbitration hearing.  Nor has Ms. Duerst presented any evidence that the requirements of reliability and informativeness have adversely affected claimants' abilities to prove their cases in practice.  Ms. Duerst has thus presented no basis from which we can conclude that rule 29 has the effect she says it does.

Our court has recognized that discovery "is generally much more limited in arbitration" and that "arbitrators have broad discretion as to grant or deny the ability to obtain discovery."  Green Tree Servicing, LLC v. McLeod, 15 So. 3d 682, 692 (Fla. 2d DCA 2009) (quoting Rintin Corp., S.A. v. Domar, Ltd., 374 F. Supp. 2d 1165, 1170 (S.D.

Fla. 2005)). Streamlined discovery is one of the ways in which arbitration realizes cost- and time-saving advantages over ordinary civil litigation. This case does not require us to define the circumstances in which a discovery-limiting provision in an arbitration agreement crosses the line between commercial reasonability and substantive unconscionability. Whatever those circumstances may be, they must involve something more than an assertion that the discovery provided for in arbitration is more limited than the discovery afforded under the rules of civil procedure. Cf. Gordon, 72 So. 3d at 167 ("The Estate has not cited to, and this court has been unable to locate, any cases where a limitation on discovery and a $250,000 cap on noneconomic damages alone—without a limitation on punitive damages—support a finding of substantive unconscionability."). Because that is in essence and effect all that Ms. Duerst has asserted here, NAF rule 29 does not evidence substantive unconscionability in this case.

Ms. Duerst also contends that the arbitration agreement unconscionably eliminates her right to judicial review of the arbitrator's decision. As support, she points to a provision of the arbitration agreement providing that the parties opt out of NAF rule 43, which makes provision for, among other things, judicial review of arbitration awards. The agreement does not restrict Ms. Duerst's right to judicial review.

Although the agreement opts out of NAF rule 43, it separately provides (1) that the Federal Arbitration Act applies to the agreement and (2) that the arbitrator's decision shall be final with the exception of the right of judicial review provided under the Federal Arbitration Act. The Federal Arbitration Act provides for judicial review of arbitration awards on specified grounds enumerated by statute. See 9 U.S.C. § 10. Although the statutory grounds for judicial review of an arbitration award are substantially

- 14 -

more limited than an appellate court's review of a trial court's final judgment, Ms. Duerst correctly declines to contend that the agreement's adoption of those statutory provisions is substantively unconscionable. Because the arbitration agreement affords Ms. Duerst a right to judicial review in accord with existing law, it cannot be said to deny or restrict that right. Compare Jonathan M. Frantz, M.D., P.A., v. Shedden, 974 So. 2d 1193, 1198 (Fla. 2d DCA 2008) (holding that provision that the arbitrator's decision would be final and binding did not deny a right of judicial review where the agreement was made subject to the Florida Arbitration Code, which included a right of judicial review), with Healthcomp Evaluation Servs. Corp. v. O'Donnell, 817 So. 2d 1095, 1096 (Fla. 2d DCA 2002) (holding that a clause providing that "there shall be no appeal or review whatsoever" was offensive and unenforceable (emphasis omitted)). Thus, the provision opting out of NAF rule 43 does not support Ms. Duerst's claim of substantive unconscionability.

In sum, Ms. Duerst's argument on substantive unconscionability boils down to a quarrel with two standard features of arbitration—the fact that it involves more limited discovery than civil litigation and the fact that it affords more limited rights of judicial review than civil litigation. Even if there were some slight measure of procedural unconscionability leading to the execution of the arbitration agreement, Ms. Duerst has failed to demonstrate that substantive unconscionability is present in any measure.

III.

On balance, as described in Basulto, the facts of this case do not support the existence of either procedural or substantive unconscionability. The trial court's order denying the Bay Tree parties' motion to stay this litigation and compel arbitration is

- 15 -

therefore reversed. The case is remanded to the trial court with instructions to enter an order granting the Bay Tree parties' motion.

Reversed and remanded with instructions.


ALTENBERND and WALLACE, JJ., Concur.