DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PALM COURT NH, L.L.C.** d/b/a **WILTON MANORS HEALTH & REHABILITATION CENTER,**
Appellant,

v.

**RICKIEE DOWE,** as Personal Representative of the Estate of **ROSA LEE GREEN,** and on behalf of the surviving children, **RICHARD DOWE, WILLIE DOWE, ROBERTA BARNETTE, IRENE KELLEY, LORETTA MORGAN,** and **THOMAS LEE DOWE, SR.,**
Appellee.

No. 4D20-1630

[January 5, 2022]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. CACE20000652.

Thomas A. Valdez and Vilma Martinez of Quintairos, Prieto, Wood & Boyer, P.A., Tampa, for appellant.

Harvey J. Sepler of Alvarez/Gonzalez/Menezes LLP, Hollywood, for appellee.

KLINGENSMITH, J.

Palm Court NH, LLC, doing business as Wilton Manors Health & Rehabilitation Center ("the nursing home"), appeals a non-final order denying its motion to compel arbitration.[1] Rickiee Dowe, the personal representative of the estate of Rosa Lee Green, opposed the motion on various grounds but primarily argued the arbitration agreement was vague and unenforceable because it was governed by the Federal Arbitration Act ("FAA") by its express terms. The personal representative asserted such a

---

[1] Our court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv), which authorizes appeals to the district courts from non-final orders for the limited purpose of determining a party's entitlement to arbitration.

provision violated public policy because it limited his right to appeal. We disagree, and for the reasons set forth below, we reverse.

Here, the personal representative filed a wrongful death action against the nursing home under Chapter 400, Florida Statutes (2019), the Nursing Home Residents' Rights Act, which alleged the staff's failure to provide appropriate wound care led to Ms. Green's death. The nursing home moved to compel arbitration based upon a Voluntary Arbitration Agreement that the parties entered into when Ms. Green moved to the nursing home. This Agreement stated, in pertinent part:

> **2. Scope of Agreement:** The parties agree to resolve by binding arbitration any legal dispute, controversy, demand, or claim that arises in connection with or is in any way related to the Resident's stay at the Facility (referred to collectively herein as "Disputes"), with the exception of claims for which the claimant stipulates in writing that the amount sought is equal to or less than $20,000. This agreement does not waive or eliminate any duty imposed by law to participate in any statutory or administrative agency grievance proceedings prior to bringing or maintaining a claim in court.
>
> . . . .
>
> **7. Applicability of Federal Law:** The Federal Arbitration Act ("FAA") governs this Agreement. This Facility's operations involve federal entitlement programs and/or multistate vendors and service, and therefore the Resident's stay involves interstate commerce.

The trial court denied the motion to compel, agreeing with the personal representative that the arbitration agreement was void as against public policy. At the hearing on the motion, the judge discussed a party's right to a jury trial and the law's aversion to attempts to contractually circumvent or dismantle legislative protections for nursing home residents. The court's written order following the hearing supported the denial of arbitration by relying on cases that invalidated arbitration agreements with provisions that limited the relief afforded to residents by remedial statutes enacted for their protection. *See Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. 1st DCA 1999); *SA-PGA-Ocala, LLC v. Stokes*, 935 So. 2d 1242 (Fla. 5th DCA 2006); *Blankfeld v. Richmond Health Care, Inc.*, 902 So. 2d 296 (Fla. 4th DCA 2005); *Alterra Healthcare Corp. v. Est. of Linton, ex rel. Graham*, 953 So. 2d 574 (Fla. 1st DCA 2007). The trial court's order did not specify how the arbitration agreement—or the application of the

FAA to this dispute—limited any remedial provision of the Nursing Home Residents' Rights Act or was otherwise contrary to public policy. This appeal followed.

"We review a trial court's order denying a motion to compel arbitration de novo." *Glenn B. Wright Const. & Dev., Inc. v. Cohara*, 87 So. 3d 1276, 1277 (Fla. 4th DCA 2012) (citing *BGT Grp. v. Tradewinds Engine Servs.*, 62 So. 3d 1192, 1194 (Fla. 4th DCA 2011)).

When ruling on a motion to compel arbitration, a trial court must make a three-pronged inquiry: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). The Florida Supreme Court has connected the first prong's use of the term 'valid' to public policy because "[n]o valid agreement exists if the arbitration clause is unenforceable on public policy grounds." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 465 (Fla. 2011) (quoting *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 398 (Fla. 2005)).

In this case, the trial court denied the motion to compel based on the first prong of the inquiry, ruling the arbitration agreement was invalid as contrary to public policy. However, neither waiving access to courts, *see Slusser ex rel. Slusser v. Life Care Ctrs. of Am., Inc.*, 977 So. 2d 662, 663 (Fla. 4th DCA 2008), nor limiting judicial review, *see Fla. Holdings III, LLC v. Duerst ex rel. Duerst*, 198 So. 3d 834, 843 (Fla. 2d DCA 2016), alone make an arbitration agreement unenforceable as against public policy.

The arbitration agreement also meets the second and third prongs required for the court to grant the motion to compel. An arbitration "provision which is broad in scope allows for arbitration of claims 'arising out of or related to' the contract, including tort claims." *Cooper v. Rehab. Ctr. at Hollywood Hills LLC*, 305 So. 3d 3, 4 (Fla. 4th DCA 2020) (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 639 (Fla. 1999)); *see Stacy David, Inc. v. Consuegra*, 845 So. 2d 303, 306 (Fla. 2d DCA 2003) (stating that when a contract employs a broad form arbitration clause, such as "any controversy or claim arising out of or relating to," it is well-established that the contract requires arbitration of tort issues). Under the broad language of the arbitration agreement signed by the parties, the personal representative's tort claim is an arbitrable issue because it "emanates from an inimitable duty created by the parties' unique contractual relationship." *Cooper*, 305 So. 3d at 5 (quoting *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013)). Furthermore, the nursing home did not waive arbitration under these facts. *See Bland v. Green Acres Grp., L.L.C.*, 12 So. 3d 822, 824–25 (Fla. 4th DCA 2009) (concluding that arbitration may be

waived if the party actively participates in the suit, filing an answer to a suit, or generally acting "inconsistently with the arbitration right"). With the three prongs met, the trial court erred in denying the nursing home's motion to compel arbitration.

The personal representative claimed that even if the trial court granted the motion to compel arbitration, the Florida Arbitration Code ("FAC") would apply instead of the FAA because the nursing home's operation had no connection to interstate commerce. He is incorrect. An arbitration clause in a contract not involving interstate commerce is subject to the FAC. *See O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So. 2d 181, 184 (Fla. 2006). Whereas if a transaction involves interstate commerce, the FAA applies. *See Mintz & Fraade, P.C. v. Beta Drywall Acquisitions, LLC*, 59 So. 3d 1173, 1175 (Fla. 4th DCA 2011). The Florida Supreme Court has stated courts must "look to whether the transaction in fact involved interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Visiting Nurse Ass'n of Fla. v. Jupiter Med. Ctr., Inc.*, 154 So. 3d 1115, 1125 (Fla. 2014) (*citing Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995)).

It is undisputed that Ms. Green's care was paid in part by Medicare, the federal health insurance program for people sixty-five or older. In *Visiting Nurse Ass'n of Fla.*, the Florida Supreme Court held that interstate commerce was involved where, among other factors, a nursing home resident received health care paid in part by the federal Medicare program. *See Visiting Nurse Ass'n of Fla.*, 154 So. 3d at 1125 (quoting *Miller v. Cotter*, 863 N.E.2d 537, 544 (Mass. 2007)) ("[H]ealth care is an activity that in the aggregate would represent a general practice subject to federal control and holding that 'accepting payment from Medicare, a Federal program . . . constitutes an act in interstate commerce.'").

In sum, the parties clearly contemplated governance by the FAA because the arbitration agreement explicitly stated the FAA applied. Further, the use of Medicare to pay part of the resident's on-going health care indicated the nursing home's operation was a part of interstate commerce. Given this, it is clear the FAA, not the FAC, applies here. Accordingly, we reverse and remand for the trial court to grant the nursing home's motion to compel arbitration.

*Reversed and remanded.*

GERBER and KUNTZ, JJ., concur.

*         *         *

4

*Not final until disposition of timely filed motion for rehearing.*