[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15351

_____

D.C. Docket No. 1:14-cv-23105-KMW

WILLMAN SUAZO,

Plaintiff - Appellant,

versus

NCL (BAHAMAS), LTD.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 10, 2016)

Before MARCUS, JORDAN and WALKER,[*] Circuit Judges.

_____

[*] Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

MARCUS, Circuit Judge:

In this appeal, we address a question of first impression in the Circuit: whether a cruise ship employee who is injured on the job, and whose employment contract contains an arbitration agreement governed by the New York Convention and Chapter 2 of the Federal Arbitration Act, can bar arbitration by showing that high costs may prevent him from effectively vindicating his federal statutory rights in the arbitral forum.  Our New York Convention precedent suggests (but does not hold) that a party may only raise this type of public-policy defense in opposition to a motion to enforce an arbitral award <u>after</u> arbitration has taken place, and not in order to defeat a motion to compel arbitration.  However, we need not definitively answer this question today because, even if we were to assume that the plaintiff-appellant Willman Suazo could raise a cost-based (public policy) defense in response to defendant-appellee NCL's motion to compel arbitration, on this record he has plainly failed to establish that the costs of arbitration would preclude him from arbitrating his federal statutory claims.  Thus, we affirm the district court's order compelling the parties to arbitrate.  We deny, however, the defendant's motion for sanctions.

## I.

In 1958, the United Nations Economic and Social Council adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

2

Convention Done at New York June 10, 1958, T.I.A.S. No. 6997, 21 U.S.T. 2517

(Dec. 29, 1970) (the "New York Convention").  The New York Convention

requires signatory states to recognize written arbitration agreements "concerning a

subject matter capable of settlement by arbitration."  New York Convention, art.

II(1).  The United States became a signatory to the Convention in 1970.  Chapter 2

of the Federal Arbitration Act, the "Convention Act," implements the New York

Convention: "The Convention on the Recognition and Enforcement of Foreign

Arbitral Awards of June 10, 1958, shall be enforced in the United States in

accordance with this chapter."  9 U.S.C. § 201.  The Supreme Court has explained

that "the principal purpose" behind the adoption of the Convention "was to

encourage the recognition and enforcement of commercial arbitration agreements

in international contracts and to unify the standards by which agreements to

arbitrate are observed and arbitral awards are enforced in the signatory countries."

Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974).

We have elaborated on this theme:

The purpose of the New York Convention, and of the United States'
accession to the convention, is to "encourage the recognition and
enforcement of international arbitral awards," Bergesen v. Joseph
Muller Corp., 710 F.2d 928, 932 (2d Cir. 1983), to "relieve congestion
in the courts and to provide parties with an alternative method for
dispute resolution that [is] speedier and less costly than litigation."
Ultracashmere House, Ltd. v. Meyer, 664 F.2d 1176, 1179 (11th Cir.
1981). . . .  The Convention, and American enforcement of it through
the FAA, "provide[ ] businesses with a widely used system through
which to obtain domestic enforcement of international commercial

3

arbitration awards resolving contract and other transactional disputes, subject only to minimal standards of domestic judicial review for basic fairness and consistency with national public policy." G. Richard Shell, "Trade Legalism and International Relations Theory: An Analysis of the World Trade Organization," 44 Duke L.J. 829, 888 (1995).

Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998).

Basically, the Convention Act creates two causes of action in federal court for a party seeking to enforce an arbitration agreement that falls under the New York Convention: a motion to compel arbitration "in accordance with the agreement," 9 U.S.C. § 206; and a motion to "confirm" an arbitral award, id. § 207 (emphasis added). The Convention provides that certain defenses may be raised in response to each cause of action. Article II of the Convention, like 9 U.S.C. § 206, applies at the "initial arbitration-enforcement stage." Escobar v. Celebration Cruise Operator, Inc., 805 F.3d 1279, 1286 (11th Cir. 2015). Article II carefully prescribes a limited set of defenses that may be considered at the arbitration-enforcement stage:

> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

New York Convention, art. II(3) (emphasis added). "Importantly, Article II contains no explicit or implicit public-policy defense at the initial arbitration-

4

enforcement stage." Escobar, 805 F.3d at 1287. We have held that the Convention requires that a motion to compel arbitration must be granted "so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the Convention applies." Lindo v. NCL (Bahamas), Ltd., 652 F.3d 1257, 1276 (11th Cir. 2011) (footnote omitted) (citing Bautista v. Star Cruises, 396 F.3d 1289, 1294-95 (11th Cir. 2005)); see also Escobar, 805 F.3d at 1285-86. An arbitration agreement falls within the jurisdiction of the New York Convention if: (1) the agreement is "in writing within the meaning of the [New York] Convention"; (2) "the agreement provides for arbitration in the territory of a signatory of the [New York] Convention"; (3) "the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial"; and (4) a party to the agreement is not an American citizen or the commercial relationship has some reasonable relation with one or more foreign states. Bautista, 396 F.3d at 1294 n.7.

Article V of the Convention, like 9 U.S.C. § 207, governs only the "award-enforcement" stage, and provides for a substantially broader set of defenses that may be raised in response to a motion to confirm an arbitral award. See New York Convention, art. V(1)-(2). One of Article V's seven permitted defenses is a "public policy" defense:

> Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
>
> . . .
>
> > (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Id., art. V(2).   Notably, this public-policy defense, like the other Article V defenses, "applies only at the award-enforcement stage."   Lindo, 652 F.3d at 1263. Therefore, parties must "wait until the award-enforcement stage to assert an Article V public-policy claim."   Escobar, 805 F.3d at 1287.

Chapter 1 of the FAA governs domestic arbitration, and provides a broad array of defenses to the enforcement of arbitration agreements in the cases that it governs.   See 9 U.S.C. § 2 (Courts shall enforce agreements governed by Chapter 1 of the FAA "save upon such grounds as exist at law or in equity for the revocation of any contract.").   However, the broad defenses applicable in the context of domestic arbitration are not generally available in cases governed by the New York Convention:

> Domestic defenses to arbitration are transferrable to a Convention Act case only if they fit within the limited scope of defenses [contained in Articles II and V of the Convention].   Such an approach is required by the unique circumstances of foreign arbitration[, where]
>
> > concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even

> assuming that a contrary result would be forthcoming in a domestic context.

Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 629 (1985).

Bautista, 396 F.3d at 1302.

The "effective vindication doctrine" is one defense that the federal courts have recognized in the context of domestic arbitration. As the Supreme Court has explained:

> The "effective vindication" exception . . . originated as dictum in Mitsubishi Motors, where we expressed a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat[e] ... as a prospective waiver of a party's right to pursue statutory remedies." 473 U.S., at 637, n. 19 (emphasis added). Dismissing concerns that the arbitral forum was inadequate, we said that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Id., at 637. Subsequent cases have similarly asserted the existence of an "effective vindication" exception, see, e.g., 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 273–274 (2009); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991), but have similarly declined to apply it to invalidate the arbitration agreement at issue.
>
> . . . . As we have described, the exception finds its origin in the desire to prevent "prospective waiver of a party's right to pursue statutory remedies," Mitsubishi Motors, supra, at 637, n. 19 (emphasis added). That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. See Green Tree Financial Corp.–Ala. v. Randolph, 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights"). But the fact that it is not worth the expense involved in

proving a statutory remedy does not constitute the elimination of the right to pursue that remedy.

Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2310-11 (2013) (footnote omitted). The Supreme Court has never invoked the effective vindication doctrine to justify the refusal to enforce an arbitration clause in either the domestic or foreign arbitration context. Id. at 2310. Moreover, we are aware of no court that has even applied the effective vindication doctrine to invalidate an arbitration agreement in the context of a New York Convention case. See Escobar, 805 F.3d at 1291.

## II.

### A.

The basic facts essential to the resolution of this appeal are undisputed. Suazo, a Nicaraguan citizen, signed an employment contract (the "Employment Agreement") with NCL to work aboard one of its cruise ships. The Employment Agreement plainly requires arbitration of any dispute arising out of his employment with NCL:

> ARBITRATION – Seaman agrees, on his own behalf and on behalf of his heirs, executors, and assigns, that any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with Company . . . shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards [(the "New York Convention")], except as otherwise provided in any government mandated contract . . . .

8

The place of the arbitration shall be the Seaman's country of citizenship, unless arbitration is unavailable under The Convention in that country, in which case, and only in that case, said arbitration shall take place in Nassau, Bahamas.  The substantive law to be applied to the arbitration shall be the law of the flag state of the vessel. . . .

The arbitration referred to in this Article is exclusive and mandatory. Lawsuits or other proceedings between the Seaman and the Company may not be brought except to enforce the arbitration provision of this Agreement or to enforce a decision of the Arbitrator.

The Agreement is silent as to who must bear the costs of arbitration.  However, it says that "the employment relationship established hereunder shall at all times be subject to and governed by the [Collective Bargaining Agreement ("CBA")]."

The CBA in turn provides:[1]

7. Arbitration

. . . .

e.  In the event a dispute between the [Norwegian Seafarers' Union ("NSU")] and NCL, or between NCL and a Seafarer represented by the NSU, cannot be resolved through good faith negotiations and either party commences an arbitration proceeding, NCL shall bear the reasonable costs related to the arbitration process from beginning to end including, but not limited to fees charged and expenses incurred by arbitrators, and any costs related to proceedings brought by the NSU necessary to enforce a decision.  The NSU and NCL shall each bear the costs of their own attorney fees and legal representation.

---

[1] The CBA was not provided to the district court.  However, it was referenced in the Employment Agreement, which was presented to the district court.  Moreover, NCL quoted from the CBA at length in its filings in the district court and offered to submit it upon request.  Suazo did not object to NCL's references to the CBA in the district court or request that the full CBA be submitted.  Accordingly, we consider the pertinent portions of the CBA on appeal.

f. If the Seafarer rejects the representation appointed by the NSU at arbitration or thereafter, or if he or she initiates arbitration independently, then he or she will cover the cost of his or her own legal representation, if any. Where the Seafarer is not represented by the NSU, the arbitrator shall seek the NSU's opinion as to the interpretation of this Agreement before making a decision.

Thus, the CBA provides that, if the Seafarer is represented by the Norwegian Seafarers' Union in arbitration, NCL will bear the "reasonable costs related to the arbitration process from beginning to end." However, the CBA is silent as to who bears the cost of arbitration if the "Seafarer rejects the representation appointed by the NSU." In this situation -- which the parties agree is applicable here -- both NCL and the International Center for Dispute Resolution, which performs the arbitrations between NCL and its employees, have taken the position that the employee and NSU must each bear one-half of the costs until the arbitrator decides who will pay the costs

Suazo worked for NCL aboard the Bahamian vessel Norwegian Epic, where his duties consisted of frequent heavy lifting. In April 2011, he was injured while lifting heavy garbage bins as part of his duties onboard the ship. He went to the ship's doctor complaining of back pain, was prescribed pain medications, and was sent back to work. His pain continued to worsen until he could no longer work. On August 24, 2011, Suazo was flown home to Nicaragua on medical leave. NCL did not make arrangements for his medical care in Nicaragua until after Suazo

contacted the local hiring agency requesting medical attention.  On August 31, 2011, NCL referred Suazo to an orthopedic surgeon, who diagnosed him with a herniated disc that was compressing a nerve in his spine and prescribed physical therapy and epidural steroid injections.  Suazo received treatment throughout 2012, but his medical care was terminated in December 2012 before he was healed.  NCL ignored requests to reinstate his medical care.

## B.

On December 20, 2013, Suazo, represented by private counsel, brought suit against NCL in Florida circuit court in Miami-Dade County.  The four-count complaint asserted claims for negligence under the Jones Act, 46 U.S.C. § 30104, and under general maritime law.  NCL timely removed the case to the United States District Court for the Southern District of Florida pursuant to 9 U.S.C. § 205, which allows for the removal of state court actions relating to an arbitration agreement that falls under the New York Convention "at any time before the trial thereof."  After removing the case to federal court, NCL filed a motion to dismiss and compel arbitration.

Suazo opposed NCL's motion to compel arbitration.  He noted that, although the employment agreement was silent as to who would bear the costs of arbitration for individuals who forego representation by the Norwegian Seafarers' Union, NCL had said that it would require him to pay half of the costs of arbitration.  He

11

claimed that he was too poor to bear that cost and, therefore, that the district court should refuse to compel arbitration in the first place. Suazo submitted an affidavit in support of his opposition, which stated, in pertinent part only this:

> 5. I am from a poor rural community in Nicaragua. It is not easy to find work in my home country.
>
> 6. I am the main source of income in my family. I financially support my family.
>
> 7. I do not have any money to pay for an arbitration, much less for an arbitrator's salary.
>
> 8. I do not have the means to pay for thousands of dollars to an arbitrator. To do so would mean to deprive my family of support.

On November 4, 2014, the district court granted NCL's motion and compelled the parties to arbitrate, retaining jurisdiction of the case in order to enforce the arbitration award "if appropriate." The court reasoned that Suazo's argument that he could not afford to pay the costs of arbitration invoked the "effective vindication doctrine," which was a "public policy" defense that could not be considered at the arbitration-enforcement stage under the New York Convention.[2] This timely appeal ensued.

Suazo raises a single question on appeal: whether he may defeat NCL's motion to compel arbitration by showing that he is too poor to afford the costs of

---

[2] The district court also rejected Suazo's claims that the FAA precludes enforcement of arbitration agreements in seaman's employment contracts, and that the arbitration agreement's choice of foreign law rendered the agreement unenforceable. Suazo has not raised those arguments on appeal.

arbitration.  On May 6, 2015, NCL moved to dismiss the appeal for want of jurisdiction, suggesting that the district court's order compelling arbitration was a non-final, non-appealable order under 9 U.S.C. § 16(b).  While that motion was pending in our Court, NCL moved for sanctions, arguing that Suazo's appeal was frivolous and that the Court should award it double costs and reasonable attorneys' fees.

On June 23, 2015, we denied NCL's motion to dismiss, concluding that the order compelling arbitration was a final, appealable order.  See 9 U.S.C. § 16(a)(3); Martinez v. Carnival Corp., 744 F.3d 1240, 1243-45 (11th Cir. 2014) (holding that an order compelling arbitration was final and appealable where the order denied all pending motions as moot, administratively closed the case, and neither expressly stayed nor expressly dismissed the case); Bautista, 396 F.3d at 1294 (holding that a district court's retention of jurisdiction to enforce or confirm a resulting arbitral award does not destroy finality).  NCL's motion for sanctions is still pending in this Court.

### III.

We review de novo a district court order granting a motion to compel arbitration.  In re Checking Account Overdraft Litig., 754 F.3d 1290, 1293 (11th Cir. 2014).  The district court was required to compel arbitration if the arbitration agreement satisfied the four jurisdictional prerequisites found in the New York

Convention and none of Article II's arbitration-enforcement stage defenses applied. Lindo, 652 F.3d at 1276. It is undisputed that the four jurisdictional prerequisites have been met. The parties agree that: the employment agreement is in writing; the agreement provides for arbitration in Nicaragua, which has signed the Convention; Suazo's employment with NCL was a commercial relationship; and Suazo is not an American citizen. See Bautista, 396 F.3d at 1295 n.7 (listing jurisdictional requirements). Suazo argues, nevertheless, that the district court erred in compelling him to arbitrate because he cannot afford the costs of arbitration that he will be required to pay and, therefore, he will be unable to effectively vindicate his federal statutory rights in the arbitral forum.

A.

We have not squarely decided whether a party can raise a cost-based effective vindication defense at the arbitration-enforcement stage under the New York Convention, and we are aware of no other federal circuit court that has done so. Nevertheless, three of our decisions provide substantial guidance.

In Bautista v. Star Cruises, 396 F.3d 1289 (11th Cir. 2005), several cruise ship employees who were injured at work brought suit in federal district court against their employers, asserting claims under the Jones Act, 46 U.S.C. § 688, and under the general maritime law of the United States. Id. at 1292. The district court found that the employment relationship was governed by an arbitration clause and

14

compelled the parties to arbitrate the dispute under the New York Convention. Id. at 1294. The plaintiffs appealed the order compelling arbitration, arguing, among other things, that the arbitration provision was unconscionable. Id. at 1301-02.

We affirmed the order compelling arbitration. We began by explaining that the New York Convention "requires that courts enforce an agreement to arbitrate unless the agreement is 'null and void, inoperative or incapable of being performed.'" Id. at 1301 (quoting New York Convention, art. II(3)). We adopted the First Circuit's view that Article II's "'null and void' clause . . . limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses," and that the clause "must be interpreted to encompass only those situations – such as fraud, mistake, duress, and waiver – that can be applied neutrally on an international scale." Id. at 1302 (internal quotation marks omitted) (quoting DiMercurio v. Sphere Drake Ins. PLC, 202 F.3d 71, 79-80 (1st Cir. 2000)). We observed that unconscionability could provide a defense to arbitration enforcement in the domestic context, but that "[d]omestic defenses to arbitration are transferrable to a Convention Act case only if they fit within the limited scope of defenses" contained in the Convention. Id. (emphasis added). Because we "doubt[ed] that there exists a precise, universal definition of [unconscionability] that may be applied effectively across the range of countries

15

that are parties to the Convention," we refused to consider the plaintiffs' unconscionability defense and affirmed the order compelling arbitration. Id.

After Bautista, some confusion arose in this Circuit about which defenses could properly be raised at the arbitration-enforcement stage under the New York Convention. In Thomas v. Carnival Corp., 573 F.3d 1113 (11th Cir. 2009), a panel of our Court reversed a district court's order compelling arbitration because the arbitration agreement required the application of Panamanian law and would, therefore, deprive the plaintiff of his ability to assert his United States statutory claims. Id. at 1124. Citing Article V -- which, unlike Article II, contains an explicit public policy defense -- the panel reasoned that the New York Convention allowed a party to defeat a motion to compel arbitration by establishing that an arbitration clause "is null and void as a matter of public policy." Id. at 1120-24 & n.17.

We addressed the apparent conflict between Bautista and Thomas in Lindo v. NCL (Bahamas), Ltd., 652 F.3d 1257 (11th Cir. 2011). In Lindo, a Bahamian cruise ship employee sued his employer, NCL, in Florida circuit court in Miami-Dade County, alleging that he had injured his back while lifting trash bags at work, bringing a claim under the Jones Act. Id. at 1260-61. The employment agreement between NCL and the employee required all such claims to be arbitrated in the employee's country of citizenship, which was Nicaragua, and that the law of the

16

vessel, which was the Bahamas, would apply. Id. NCL removed the case to federal court and moved to compel arbitration; the district court granted the motion. Id. at 1261-62. Lindo appealed and, relying heavily on Thomas, argued that the application of Bahamian law in the arbitral forum would prevent him from effectively vindicating his United States statutory rights under the Jones Act. He also asserted that the arbitration agreement was unconscionable and, therefore, unenforceable. Id. at 1276.

We affirmed the district court's order compelling arbitration. First, we explained, we were required to "start our analysis with a strong presumption in favor of the arbitration agreement in Lindo's Contract," and that presumption was unaffected by the fact that Lindo was seeking to litigate federal statutory claims. Id. at 1275-76. Because Lindo conceded that the four jurisdictional prerequisites to the New York Convention were met, id. at 1276 & n.17, we needed only to decide whether Lindo's effective vindication argument constituted an available affirmative defense under the Convention. Citing Bautista, 396 F.3d at 1302, we held that Lindo had not made any "claim – much less any showing – of fraud, mistake, duress, or waiver," and he therefore could not avoid arbitration under Article II. Id. at 1276.

We explained that Thomas could not help Lindo avoid arbitration because, "to the extent Thomas allowed the plaintiff seaman to prevail on a new public

17

policy defense under Article II, Thomas violate[d] Bautista and our prior panel precedent rule." Id. at 1278.  Furthermore, Lindo could not raise any public policy defense under Article V because "Article V applies only at the arbitral award-enforcement stage and not at the arbitration-enforcement stage." Id. at 1280. Moreover, we noted that it was likely Bahamian law would permit Lindo to pursue the same types of claims as American law.  Thus, Lindo's "public policy" defense was "premature" at the arbitration-enforcement stage, since Lindo could challenge the manner in which the arbitration was conducted under Article V at the arbitral award-enforcement stage, when "the arbitrator . . . will have ruled and the record will show what legal principles were applied and what Lindo recovered, or did not recover, and why." Id. at 1284.  To allow Lindo to raise his choice-of-law effective vindication argument at the arbitration-enforcement stage, we concluded, "would effectively eviscerate the mutually binding nature of the Convention" because it would enable all signatory nations to refuse to enforce arbitration agreements that selected any law but their own. Id.

Most recently, in Escobar v. Celebration Cruise Operator, 805 F.3d 1279 (11th Cir. 2015), we confronted the precise question presented in this case: whether a cost-based effective vindication defense could be raised at the arbitration-enforcement stage under the New York Convention.  In Escobar, the plaintiff -- a cruise ship employee who had been injured on the job -- brought suit

18

in state court against his employer, who removed the case to federal court and moved to compel arbitration.  Id. at 1282-83.  The plaintiff had signed an employment agreement that contained an arbitration clause, which stated: "[a]lthough [the employer] shall bear the initial cost of the arbitration, each [party] shall be responsible for one half of the cost of arbitration."  Id. at 1282.  Escobar argued that his arbitration fees would be $20,000 for even a short, three-day arbitration, and he submitted an affidavit stating that he had no money to pay the fees.  Id. at 1283.  Nevertheless, the district court granted the motion to compel arbitration.  Id.  Escobar appealed, arguing under the effective vindication doctrine that the cost-splitting provision in the arbitration agreement "effectively denie[d] him access to the forum because he is indigent."  Id. at 1291.

We affirmed.  We began by observing that we had found no court that had ever applied the effective vindication doctrine to a New York Convention case.  Id. at 1291.  Yet we found it unnecessary to decide whether Escobar's cost-based effective vindication defense could be raised at the arbitration-enforcement stage, in as much as Escobar's effective vindication claim failed for three other reasons. "First, to the extent Escobar could make [an effective vindication] claim in a New York Convention case," it was "premature for Escobar to do so at this arbitration-enforcement stage."  Id. at 1292.  We reached this conclusion because the cost-splitting clause in the arbitration agreement required the employer to pay the initial

19

fee to "open the doors to begin the arbitration and begin the proceedings," id. at 1292 & n.16, meaning that "Escobar has access to the forum," id. at 1292.

Second, we determined that the "most reasonable reading" of the cost-splitting clause was that the employer would "initially pay for the cost of the arbitration itself," and that Escobar "ultimately [would] be responsible for his one-half share." Id. Recognizing that "the precise application of the cost-splitting clause [was] an issue properly for the arbitrator to consider," we found that Escobar had failed to show that he was likely to incur "any costs due prior to the arbitrator's decision." Id. (emphasis added). Third, we determined that Escobar had not provided any evidence of how much arbitration actually would cost him, and, therefore, had failed to carry his burden to prove that he would be denied access to the forum. Id. Thus, we observed that based on the arbitration clause language and his own filings, Escobar had "wholly failed to establish that he would be denied access to the forum." Id. We indicated that "the appropriate time for Escobar to raise any argument relating to the payment of fees would be at the award-enforcement stage, if and when [his employer] attempt[ed] to collect arbitral costs from him." Id.

## B.

Because Suazo is attempting to defeat a motion to compel arbitration, he can only raise his cost-based effective vindication defense if it falls within the defenses

enumerated in Article II of the New York Convention.  See Lindo, 652 F.3d at 1263.  Again, Article II requires that a court enforce an agreement to arbitrate "unless it finds that the said agreement is [1] null and void, [2] inoperative or [3] incapable of being performed."  New York Convention, art. II(3).  The Supreme Court has never applied the effective vindication doctrine and "no court [] has applied it in the context of a New York Convention case."  Escobar, 805 F.3d at 1291.  We have never determined whether a cost-based effective vindication defense can be raised under the "incapable of being performed" clause of Article II, and we need not resolve that question today because Suazo has fallen far short of establishing that enforcing the arbitration agreement in this case will effectively deny him access to the arbitral forum.

In order to prevail on a cost-based effective vindication defense in a domestic arbitration case – assuming such a defense can be raised under Article II - - a party seeking to avoid arbitration must "demonstrate that he faces such 'high costs' if compelled to arbitrate his claim . . . that he is effectively precluded from vindicating his [federal statutory] rights in the arbitral forum."  Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1259 (11th Cir. 2003) (quoting Green Tree, 531 U.S. at 90).  Recently in Escobar, we explained:

> The "party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs."  Green Tree, 531 U.S. at 92.  The mere existence of a cost-splitting clause in

an arbitration agreement does not satisfy a plaintiff's burden to prove the likelihood of prohibitive costs. See Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1259 (11th Cir. 2003). Rather, a party invoking the effective-vindication doctrine because the cost of arbitration is prohibitively expensive must present evidence of two things: (1) "the amount of the fees he is likely to incur;" and (2) "his inability to pay those fees." Id. at 1260. Speculative fear of high fees is insufficient. Id.

Escobar, 805 F.3d at 1291.

In Escobar, the arbitration agreement at issue required the employer to bear the initial cost of arbitration, but then required the parties to evenly split the remaining costs of arbitration. Id. at 1282. Escobar presented affidavit evidence that he "was unemployed, had $0 in his bank account, and did not have any money to pay for arbitration." Id. at 1283. In addition, his counsel opined that Escobar's share of the arbitration fees could amount to $20,000. Id.

We rejected Escobar's effective vindication defense for three reasons. First, Escobar would have been able to bring his claims in the arbitral forum because the arbitration agreement at issue required the employer to "pay the initial cost of arbitration." Id. at 1292 (internal quotation marks omitted). Second, we understood the arbitration agreement to require the employer to pay for all of the costs of arbitration and then to seek reimbursement from Escobar, so Escobar had not "shown that he is likely to incur any costs due prior to the arbitrator's decision." Id. (internal quotation marks omitted and emphasis added). And third,

22

Escobar had not provided any evidence (apart from counsel's speculation) to show how much arbitration would cost him.  Id.

In this case, Suazo's evidential foundation offered in support of his effective vindication argument falls short of even the paltry showing that we found insufficient in Escobar.  In the district court, Suazo submitted no evidence concerning "the amount of the fees he is likely to incur."  Escobar, 805 F.3d at 1291 (internal quotation mark omitted).  His counsel simply opined that arbitration costs could exceed $20,000, but he cited no evidence in support of that claim.  Suazo also submitted an email exchange with NCL's counsel, which stated that Suazo would be billed for half of the costs of arbitration "until a decision is made by the arbitrator once appointed."  In a later email, NCL's counsel clarified this to mean that "the costs are to be equally divided among the parties until such time as the arbitrator addresses the issue."  Finally, in his appellate brief, Suazo cited to additional evidence outside the record regarding the costs of arbitration, which suggests that Suazo would have to pay up to $2,000 to initiate arbitration and $1,750 as a final arbitration fee, assuming that the arbitrator required the parties to continue splitting costs until the end of arbitration.[3]  Even if we could consider the

_____

[3] In his reply brief on appeal, Suazo cited to the website of the International Center for Dispute Resolution ("ICDR"), the arbitration body that would hear his claim.  That website shows that the "Initial Filing Fee" for a claim of Suazo's value is $4,000, and the "Final Fee" is $3,500.  See ICDR, International Dispute Resolution Procedures, Amended and Effective July 1, 2015, http://info.adr.org/ICDRfeeschedule/. He contends that he would have to pay half of that fee, or $2,000.

23

evidence submitted for the first time on appeal, which we generally would not do, see Sammons v. Taylor, 967 F.2d 1533, 1544 (11th Cir. 1992), Suazo still could not prevail.

Suazo's factual foundation for regarding his "inability to pay [the arbitration] fees," Escobar, 805 F.3d at 1291, is insufficient. The only record evidence offered is Suazo's affidavit, which states, in sum, that he lives in a poor community where it is "not easy to find work," that he "do[es] not have money to pay for an arbitration, much less for an arbitrator's salary," and that he "do[es] not have the means to pay for thousands of dollars to an arbitrator." These conclusory statements do not establish that Suazo could not afford to pay even $3,750, a figure he claims he might incur in arbitration. Indeed, Suazo's affidavit is less specific than the affidavit offered by the plaintiff in Escobar, which said that he was unemployed and had $0 in his bank account. Escobar, 805 F.3d at 1283.

We recognize that the arbitration agreement in this case is distinguishable from the agreement at issue in Escobar. While "application of the cost-splitting clause is an issue properly for the arbitrator to consider," id. at 1292, it seems likely that Suazo will be required to bear half of the cost of initiating arbitration and "may" also become responsible for some other costs prior to the arbitrator's decision. Even so, on this almost barren record, Suazo has not carried his burden

of proving that it is likely that unaffordable costs will deny him "access to the forum." Id.

We hold that Suazo cannot prevail on his effective vindication defense for a second and independent reason. The CBA between Suazo and NCL provided that, as long as Suazo was represented by the Norwegian Seafarers' Union, NCL "shall bear the reasonable costs related to the arbitration process from beginning to end." However, if Suazo chose to initiate arbitration "independently" of the NSU, the CBA is silent as to who must bear the costs of arbitration. On this record, it appears that the only reason Suazo would be required to bear any cost in arbitrating his dispute with NCL is because he opted to retain private counsel instead of proceeding to arbitrate with union-appointed counsel. The agreement gave him a choice: arbitrate for free with your union-chosen representation, or pay your own way with counsel of your choice. Having chosen the latter course of action, we will not second-guess the bargain struck in the contract and let Suazo eat his cake and have it too. Because the arbitration agreement and the CBA gave him the ability to arbitrate for free and thereby "vindicate[e] his [federal statutory] rights in the arbitral forum," Musnick, 325 F.3d at 1259, his effective vindication defense is unmeritorious.[4]

---

[4] At oral argument, Suazo's counsel suggested that NSU would not actually represent a seafarer in a dispute with NCL and, therefore, the CBA does not provide an alternative means of

Thus, since Suazo has not established any basis on which to deny NCL's motion to compel arbitration, we affirm the district court's order compelling the parties to arbitrate the dispute.

IV.

After Suazo filed his opening appellate brief, NCL moved for sanctions pursuant to Fed. R. App. P. 38 and 28 U.S.C. § 1927, arguing that Suazo's appeal is frivolous because his "public policy defense has been repeatedly and expressly rejected by binding Eleventh Circuit precedent following Lindo," and seeking an award of double costs and reasonable attorneys' fees from Suazo or his counsel.

Fed. R. App. P. 38 provides:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

"Rule 38 sanctions have been imposed against appellants who raise 'clearly frivolous claims' in the face of established law and clear facts." Farese v. Scherer, 342 F.3d 1223, 1232 (11th Cir. 2003). Where an appeal requires a court to decide an issue of first impression in a circuit court, it is not frivolous. See Albra v. Advan, Inc., 490 F.3d 826, 835 (11th Cir. 2007). Title 28 U.S.C. § 1927, in turn, provides:

---

effectively vindicating his rights. However, there is no evidence in this record that the CBA does not operate as its text suggests or that Suazo sought and was refused NSU representation.

26

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

We have "consistently held that an attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2006) (internal quotation marks omitted).

Sanctions are not appropriate in this case. To the extent that NCL's motion was based on its claim that we did not have jurisdiction to consider this appeal, we already decided that NCL was incorrect when we denied NCL's motion to dismiss. Moreover, Suazo's appeal was not frivolous. He raised a single argument on appeal relating to the effective vindication doctrine, which involved a question of first impression in our Court. Finally, Suazo's appeal did not unnecessarily multiply the proceedings in this case, since he raised only a single issue, and a narrow one at that. Accordingly, we deny NCL's motion for sanctions.

**ORDER TO COMPEL ARBITRATION AFFIRMED AND MOTION FOR SANCTIONS DENIED.**