David **BENTLEY**, Plaintiff,

v.

**EFN WEST PALM MOTOR SALES, LLC d/b/a Napleton's Hyundai,** Defendant.

**CASE NO. 16–80453–CIV–MARRA**

United States District Court, S.D. Florida.

Signed 10/03/2016

Ria Nikki Chattergoon, Ruben Martin Saenz, Saenz and Anderson, PLLC, Aventura, FL, for Plaintiff.

Andrew James Marchese, Marshall Dennehey Warner Coleman Goggin, Fort Lauderdale, FL, Zascha Blanco Abbott, Sioli Alexander Pino, Miami, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN FAVOR OF ARBITRATION

KENNETH A. MARRA, United States District Judge

THIS CAUSE is before the Court upon Defendant EFN West Palm Motor Sales, LLC's ("EFN West Palm Motor Sales") Motion to Dismiss or, in the Alternative, to Stay the Proceedings and to Compel Arbitration ("Motion") (DE 11). The Court has carefully considered the Motion (DE 11), Plaintiff response (DE 12), and Defendant's reply (DE 13), and is otherwise fully advised in the premises. For the reasons stated below, the Motion is granted.

## I. BACKGROUND

### A. Plaintiff

Plaintiff David Bentley, a resident of Broward County, Florida, was employed by Defendant EFN West Palm Motor Sales as a "closer" for car sales from 2008 until July 10, 2015. (DE 12–1, Plaintiff's Affidavit ("Pl.'s Aff.") ¶ 3.) In connection with his employment, Plaintiff signed a document entitled "Acknowledgment of Receipt and Understanding" in March of 2013. (DE 11–1, Affidavit of Tina Autry, Defendant's Office Manager ("Autry Aff."), Ex. A.)

### B. Arbitration Agreement

The Acknowledgment of Receipt and Understanding ("Acknowledgment") executed by Plaintiff is a short, one-and-a-half page document containing six bulleted paragraphs, all in readable font. (*Id.*) Near the top of the Acknowledgment reads: "Read, Sign, and Return to the Accounting Department Within Fourteen (14) Days." (*Id.*)

The last bulleted paragraph of the Acknowledgment, which appears directly above the signature line, is the arbitration provision in question. (*Id.*) The arbitration provision ("Arbitration Agreement") in the Acknowledgment reads as follows:

I understand and voluntarily agree that any disputes regarding terms of this pay plan or my employment or termination from employment (including claims of discrimination and/or harassment) will be resolved exclusively in accordance with binding arbitration governed by the Federal Arbitration Act, and carried out in conformity with the procedures of the Uniform Arbitration Act. Unless otherwise specifically covered by the Uniform Arbitration Act's provisions, the Arbitrator shall be governed by the Federal Rules of Civil Procedure and Evidence. To the extent applicable, the following shall also apply and be observed: all rules of pleading (including the right of dismissal), all rules of evidence, all rights to resolution of the dispute by means of motion for summary judgment, judgment on the pleadings and judgment under the Federal Rules of Civil Procedure. I further understand and voluntarily agree that this alternative dispute resolution program shall also cover all claims of discrimination or harassment under Title VII of the Civil Rights Act of 1964, as amended. Although, *I understand that signing this arbitration agreement is not required as a condition of my employment*, I desire to take advantage of the benefits of arbitration and understand that I give up the right to a trial by jury and instead will have my claims resolved by a retired court Judge. By marking the box to the right, I elect to give up the benefits of arbitrating such Title VII claims only. ☐

(*Id.* (emphasis added).) Located directly below the Arbitration Agreement are lines for the Employee's Name, the Location/Department, the Employee's Signature, the Date Signed, and the Authorized Witness. (*Id.*) As noted above, the Acknowledgment containing the Arbitration Agreement is signed and dated by Plaintiff David Bentley. (*Id.*)

### C. Execution of Arbitration Agreement

Plaintiff claims that prior to this suit he was unaware of the existence of the Arbitration Agreement located directly above his signature on the Acknowledgment. (DE 12–1, Pl.'s Aff. ¶ 3.) Defendant did not specifically alert Plaintiff to the Arbitration Agreement in connection with his execution of the Acknowledgment, and Plaintiff claims that he "was simply ordered to sign" the Acknowledgment. (*Id.* ¶¶ 6–7.) Plaintiff claims that he "was not given an opportunity to review" the Acknowledgment before signing it. (*Id.* ¶ 9.)

### D. Costs of Arbitration and Ability to Pay

Plaintiff asserts that his counsel has advised him that arbitrators charge a fee of approximately $300 to $475 per hour. (*Id.* ¶ 11.) Plaintiff claims that he cannot pay any costs associated with arbitration because of "the approximate number of hours anticipated to pursue [his] claims before an arbitrator." (*Id.* ¶ 12.) Plaintiff is presently unemployed but has not otherwise presented the Court with any information pertaining to his alleged inability to pay, such as his income, assets, and expenses. (*Id.* ¶ 10.)

### E. Procedural History

On March 22, 2016, Plaintiff filed this action against Defendant, asserting that he was unlawfully terminated pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Florida Civil Rights Act, and asserting claims under Florida common law. (DE 1, Compl.) Defendant has moved to compel arbitration based upon the Arbitration Agreement executed by Plaintiff. (DE 11.)

## II. <u>LEGAL STANDARD</u>

■ Pursuant to the Federal Arbitration Act, a district court must compel arbitration and dismiss or stay court proceedings if the parties have agreed to arbitrate their dispute. 9 U.S.C. §§ 2, 3. If the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable before compelling arbitration. *Id.* § 4; *Chastain v. The Robinson–Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992) (citing *Prima Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). There are three factors courts consider in ruling on a motion to compel arbitration, whether: (1) a valid written agreement to arbitrate exists; (2) an arbitrable issue exists; and (3) the right to arbitrate was waived. *Sims v. Clarendon Nat'l Ins. Co.*, 336 F.Supp.2d 1311, 1326 (S.D. Fla. 2004).

■ A strong federal policy favoring arbitration agreements exists. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Federal Arbitration Act seeks to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Arbitration agreements must be "rigorously enforce[d]" by the courts. *Id.* at 221, 105 S.Ct. 1238. Arbitration is a matter of contract, and, as a consequence, the Federal Arbitration Act's strong pro-arbitration policy only applies to disputes that the parties have agreed to

arbitrate. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Under the Federal Arbitration Act an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Federal Arbitration Act allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically." *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The parties here agree that Florida law governs the enforceability of the Arbitration Agreement. *See Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998) (noting that arbitration clauses are interpreted according to ordinary state-law rules of contract construction).

## III. DISCUSSION

■■ To find a contract unconscionable under Florida law, a party must establish that the contract is both procedurally and substantively unconscionable. *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989); *Stewart Agency, Inc. v. Robinson*, 855 So.2d 726, 727 (Fla. 4th DCA 2003). The Florida Supreme Court has adopted a balancing approach under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Basulto v. Hialeah Auto.*, 141 So.3d 1145, 1159 (Fla. 2014) (citation omitted). The party seeking to avoid arbitration on the ground of unconscionability has the burden of presenting evidence sufficient to support that claim. *Gainesville Health Care Center, Inc. v. Weston*, 857 So.2d 278, 288 (Fla. 1st DCA 2003).

### A. Procedural Unconscionability

■■ To determine whether a contract is procedurally unconscionable, "a court must look to the manner in which the contract was entered into and consider factors such as whether the complaining party had a meaningful choice at the time the contract was entered into." *Murphy v. Courtesy Ford, LLC*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006). "Courts consider [1] 'whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract or whether the terms were merely presented on a 'take-it-or-leave-it' basis; and [2] whether he or she had a reasonable opportunity to understand the terms of the contract.' " *Id.* (citing *Weston*, 857 So.2d at 284).

■■ In support of his claim of procedural unconscionability, Plaintiff argues that he was unaware of the existence of the arbitration agreement. Plaintiff contends that "[t]he arbitration clause was not titled or delineated in any manner in which to make it apparent to [him]" and "Defendant did not inform [him] that the "Acknowledgement of Receipt and Understanding" page included an arbitration clause and/or agreement." (DE 12–1, Pl.'s Aff. ¶¶ 5, 6.) The Court has reviewed the Arbitration Agreement closely. The Arbitration Agreement is perfectly readable. It is not hidden in a labyrinth of small print as it is one of only six paragraphs in the Acknowledgement. Moreover, the Arbitration Agreement sits directly above the signature line, which makes it difficult not to see upon execution of the Acknowledgment. Under these circumstances, Plaintiff "cannot avoid [his] contractual responsibility simply because [ ]he chose not to review the terms of [his] agreement." *Murphy*,

944 So.2d at 1135 (finding arbitration agreement procedurally conscionable even though the car dealership, which had drafted the agreement, gave evidence "that it was not their practice to inform customers of terms on the back or of the arbitration provision, and they did not inform the buyer of these terms").

Plaintiff also claims in his Affidavit that he was not given an opportunity to review the Arbitration Agreement and lacked any meaningful choice at the time he signed the agreement. Specifically, Plaintiff claims that "was simply ordered to sign the 'Acknowledgement of Receipt and Understanding' page" and he "was not given the opportunity to review the 'Acknowledgement of Receipt and Understanding' page before signing it." (DE 12–1, Pl.'s Aff. ¶¶ 7, 8.) Plaintiff's statements are conclusory assertions devoid of any factual information.

A similar factually-devoid claim was recently rejected by Florida's Second District Court of Appeal in *Florida Holdings III, LLC v. Duerst*, 198 So.3d 834, 840 (Fla. 2d DCA 2016). In *Duerst*, a nursing-home resident's daughter attempted to avoid an arbitration agreement, which she signed as attorney-in-fact upon the resident's admission to the facility, on the ground of procedural unconscionability. *Id.* She argued that a hurried admissions process rendered the agreement procedurally unconscionable and emphasized that "she was given the documents and told to sign them" and "that she was under the impression that she had to sign the documents." *Id.* The court rejected the argument, reasoning that "[t]here [wa]s no evidence, however, that anyone at Bay Tree did anything to prevent [the plaintiff] from reading the agreement or to lead her to believe that, contrary to its terms, she could not decline to agree to arbitration and still have her mother admitted to the facility." *Id.*

As in *Duerst*, there is no evidence in this case that Plaintiff was prevented from reviewing the Arbitration Agreement or was coerced into signing the Acknowledgment containing it. The Acknowledgment itself instructed Plaintiff to read the document and gave Plaintiff a fourteen-day period in which to return it to Defendant's Accounting Department. (DE 11–1, Autry Aff., Ex. A., Acknowledgment ("Read, Sign, and Return to the Accounting Department Within Fourteen (14) Days").)

Furthermore, like the arbitration agreement in *Duerst*, the Arbitration Agreement here expressly states that acceptance of arbitration is not a prerequisite to continued employment. Specifically, the Arbitration Agreement states that "signing th[e] arbitration agreement [wa]s not required as a condition of [Plaintiff's] employment." (DE 11–1, Autry Aff., Ex. A., Acknowledgment ¶ 6.) In addition, the Arbitration Agreement gave Plaintiff the ability to opt out of arbitration for Title VII claims by checking a box, which Plaintiff did not do. (*Id.*) Hence, Plaintiff's claim that she did not have a meaningful choice in deciding whether to accept the Arbitration Agreement is contradicted by the express terms of the agreement itself. *Duerst*, 198 So.3d at 840 (concluding that the terms of the arbitration agreement itself established that the plaintiff had a reasonable opportunity to understand the terms and bargain over them).

For these reasons, the Court concludes that Plaintiff has not carried his burden of presenting non-conclusory evidence sufficient to support his claim of procedural unconscionability.[1] Nevertheless, for the

1. "To the degree any evidence exists that the agreement was procedurally unconscionable, it is outweighed by [Plaintiff's] failure to establish substantive unconscionability. As a result, [Plaintiff] has not met his burden to show that the arbitration agreement is unenforceable." *Henry v. Pizza Hut of Am., Inc.*, No. 607CV–01128–ORL–DAB, 2007 WL

sake of completeness, this Court will consider Plaintiff's substantive unconscionability claim, in addition to his cost-based defense.

## B. Substantive Unconscionability and Cost–Based Defense

"Under Florida law, substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are 'unreasonable and unfair.'" *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1139 (11th Cir. 2010) (quoting *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999)). "Unconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions that are overreaches by one party to gain "an unjust and undeserved advantage which it would be inequitable to permit him to enforce." *Basulto v. Hialeah Auto.*, 141 So.3d 1145, 1157 (Fla. 2014) (quoting *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982)).

Plaintiff makes two arguments relating to substantive unconscionability and in support of his cost-based defense. First, he emphasizes that the Arbitration Agreement does not mention costs. Second, Plaintiff argues that he cannot afford the costs of arbitration because he is unemployed, although he fails to offer any evidence sufficient to show the likely costs of arbitration or any information concerning his finances. The Court rejects both arguments, as discussed below.

As to Plaintiff's first argument, in *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the United States Supreme Court made clear that an arbitration agreement's silence regarding costs does not render the agreement unenforceable on that basis alone. *Id.* ("The record re-

veals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable."). Hence, the mere fact that the Arbitration Agreement in the case at bar does not mention costs does not render the agreement unconscionable or otherwise unenforceable.

As to Plaintiff's second argument, the Supreme Court in *Green Tree* explained that a mere "'risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree*, 531 U.S. at 91, 121 S.Ct. 513. An agreement to arbitrate is unenforceable only if the cost of arbitration effectively precludes a claimant from vindicating his federal statutory rights in the arbitral forum. *Id.* at 90, 121 S.Ct. 513. However, "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92, 121 S.Ct. 513. Under *Green Tree*, a party seeking to avoid arbitration based upon prohibitive costs "has an obligation to offer evidence of the amount of fees he is likely to incur, as well as of his inability to pay those fees." *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1260 (11th Cir. 2003).

A showing of only the possibility of incurring prohibitive costs is not sufficient to justify invalidation of the agreement. 531 U.S. at 91, 121 S.Ct. 513. For example, in *Green Tree*, the Supreme Court stated that neither citing arbitration fees incurred in other cases nor identifying an average arbitrator's fee according to an American Arbitration Association representative "affords a sufficient basis for concluding that [the plaintiff] would in fact

2827722, at *7 (M.D. Fla. Sept. 27, 2007)     (citation omitted).

have incurred substantial costs in the event her claim went to arbitration." *Id.* at 91 n.6, 121 S.Ct. 513.

In light of *Green Tree*, the Eleventh Circuit reversed a district court's order declining to compel arbitration in *Bess v. Check Express*, 294 F.3d 1298, 1303 (2002), reasoning that there was "no support for the district court's findings concerning the costs that Colburn likely would bear in arbitration or his ability to pay those costs." *Id.* The *Bess* court rejected the district court's attempt to approximate the arbitrator's fee and the number of hours the arbitration would take because the findings were not supported by evidence in the record. *Id.* Similarly, in *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1262 (11th Cir. 2003), the court of appeals held that an affidavit stating that a litigant fears the imposition of prohibitive fees was "wholly inadequate to establish that the arbitration would result in prohibitive costs that force him to relinquish his claim." *Id.*

More recently, in *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 555 (11th Cir. 2016), the Eleventh Circuit again concluded that the plaintiff "ha[d] not carried his burden of proving that it [wa]s likely that unaffordable costs w[ould] deny him 'access to the forum.'" *Id.* In *Suazo*, the plaintiff's counsel estimated arbitration costs and the plaintiff's affidavit stated that he lived in a poor community where it was "not easy to find work," that he did "not have money to pay for an arbitration, much less for an arbitrator's salary," and that he did "not have the means to pay for thousands of dollars to an arbitrator." *Id.* The court held that the plaintiff's concluso-

ry statements did not establish that plaintiff could not afford to pay the arbitration amounts he claimed he might incur in arbitration. *Id.*

Here, Plaintiff speculates that an arbitrator would charge approximately $300.00 to $475.00 per hour based upon his attorney's estimation and that he is unable to afford the costs of arbitration because he is unemployed. (DE 12–1, Plaintiff's Affidavit ¶¶ 10–13.) In Plaintiff's brief, Plaintiff speculates that this case will require a lengthy five- to seven-day trial before the arbitrator. (DE 12, Response at 6.) This showing is wholly inadequate to establish that the arbitration would result in prohibitive costs that would force Plaintiff to relinquish his claims. Plaintiff has not provided a non-speculative estimate of arbitration costs, nor has he set forth any information about his assets or income. Plaintiff's argument is thus purely speculative and insufficient to avoid enforcement of the Arbitration Agreement. *See Maldonado v. Mattress Firm, Inc.*, No. 8:13–CV–292–T–33AEP, 2013 WL 1760272, at *6 (M.D. Fla. Apr. 24, 2013) (finding the plaintiff's "perceived arbitration costs too speculative to render his agreement to arbitrate unenforceable" where plaintiff's counsel's partner submitted a statement of estimated arbitration costs and plaintiff's affidavit stated that he was unemployed).[2]

## IV. CONCLUSION

Based on the foregoing, this Court concludes that Plaintiff has not shown that the Arbitration Agreement entered into by Plaintiff and his employer is procedurally or substantively unconscionable. Plaintiff

**2.** "While the parties have not yet chosen an arbitrator and providing a non-speculative estimate of expected arbitration costs may be difficult, the same was true in *Green Tree*, in which the Supreme Court concluded that an article citing average fees for arbitrators and the respondent's citations to fees referenced

in other court decisions were insufficient." *Delano v. Mastec, Inc.*, No. 8:10–CV–320–T–27MAP, 2010 WL 4809081, at *6 (M.D. Fla. Nov. 18, 2010) (finding that two plaintiffs had not demonstrated that they were likely to incur prohibitive arbitration costs).

has also not shown that the cost of arbitration effectively precludes him from vindicating his federal statutory rights in the arbitral forum.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss or, in the Alternative, to Stay the Proceedings and to Compel Arbitration ("Motion") (DE 11) is **GRANTED**. This case is **DISMISSED** in favor of arbitration.[3]

2. The Clerk shall **CLOSE** this case. Any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida this 3rd day of October, 2016.

---

**3.** Because all of the claims in this action are arbitrable, the Court will dismiss, rather than stay, the action.